Hattie Pearl WILLIAMS et al., Appellants,

v.

Lemuel HOOKS et al., Appellees.

No. 6129.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 7, 1960.

---

James F. Parker, George Taylor, Beaumont, for appellants.

Houston Thompson, Silsbee, Ernest Sample, Beaumont, for appellees.

HIGHTOWER, Justice.

Lemuel Hooks and his brother, Raymond Hooks, Sr., brought suit against Hattie Pearl Williams and husband, L. L. Williams, and Ruby Mae Taylor and husband, George D. Taylor, seeking to reform two royalty deeds executed by them to the defendant-wives. The deeds, one from each plaintiff, purported to convey 1/128th royalty interests in three tracts of land in Hardin County aggregating less than 40 acres. It was the plaintiffs' position in trial, however, that it was through the mistake of the draftsman or scrivener that the deeds failed to limit the conveyances to a 1/128th royalty interest under one well only which well was then producing on one of the tracts, the "Lem Hooks No. 1 well." The defendants denied this and alternatively contended that the plaintiffs had ratified the deeds by their execution of certain instruments subsequent thereto. There were no contentions of fraud or other impositions. Trial was to a jury which determined the following issues:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that Lemuel Hooks and L. L. Williams mutually agreed on or about April 25, 1955, to have the royalty deeds in question drawn so as to convey the royalty interests in the Lem Hooks Tracts as to the Lem Hooks No. 1 well only?

"Answer: Lem Hooks No. 1 well only.

"Special Issue No. 2

"Do you find from a preponderance of the evidence that Raymond Hooks, Sr. and L. L. Williams mutually agreed on or about April 25, 1955, to have the royalty deeds in question drawn so as to convey the royalty interests in the Lem Hooks Tracts as to the Lem Hooks No. 1 well only?

"Answer: Lem Hooks No. 1 well only

"Special Issue No. 3

"Do you find from a preponderance of the evidence that plaintiffs, by signing the letter and transfer order in question, did

not intend to ratify and confirm the contents of the royalty deeds as now recorded?

"Answer: They did not intend to ratify

"Special Issue No. 4

"Do you find from a preponderance of the evidence that the royalty deeds dated April 25, 1955, described in plaintiffs' petition failed to limit the conveyance therein to the royalty in the Lem Hooks No. 1 well only, because of a mistake of the scrivener or draftsman preparing said documents?

"Answer: Yes."

Judgment on these jury findings was entered adversely to the defendants. Having filed no motion for new trial, as appellants, they complain only of the lower court's refusal to enter judgment in their behalf non obstante veredicto, consequently all of the testimony must be considered in the light most favorable to the appellees, and conflicts in the testimony will be disregarded and every reasonable intendment deducible from the evidence will be indulged in the appellees' favor. Seventeen points of error which we believe unnecessary to detail have been raised by the appellants.

It appears undisputed that Mr. Williams, absent Mr. Taylor's presence, negotiated the purchase under both deeds for all the appellants with Lemuel Hooks who represented his brother, Raymond. The deeds were drafted by Mr. Taylor and executed by the appellees on the 25th day of April, 1955, in the law office of Mr. Taylor in the presence of Mr. Williams, Mrs. Lemuel Hooks, the appellees, and Mrs. Patricia Eaves, secretary to the last named appellants. It also appears undisputed that immediately after appellees' offer to sell had been accepted by Mr. Williams, Mr. Taylor, upon Mr. Williams' offer, agreed to buy half of whatever interest Mr. Williams had agreed to purchase from the appellees for his wife, Ruby Mae Taylor; that is, he agreed with Williams, as it turned out, to purchase only such interest as Mr. Williams had agreed to buy from Raymond Hooks, Sr. Both deeds were executed on Texas Standard forms. Mr. Taylor and Mrs. Eaves, who typed in the forms under Mr. Taylor's instructions, testified that the deeds were complete upon their faces at the time they were executed. The appellees said not. In support of the appellees' contentions that the true intention of the parties were to effect a conveyance of the interests under one well only, Lemuel Hooks testified regarding Mr. Williams' statements at the time of the consummation of the deal in this manner:

"A. Yes, sir. It was understood and he repeated it to George whenever he gave us some papers [the deeds and other instruments] to sign, said, he repeated to George, said, telling George, 'Now, George, you understand you are only buying the interest in the one hole, that's all.' * * * That was clearly said; it was said there at the place. * * * and I sold the interest, my royalty interest in the Lem Hooks No. 1, and we discussed that and repeated it a time or two. * * * he had told George, he knowed he said it, said, 'George, this is a different deal,' says, 'We're only buying the No. 1 well.'" He stated that at the time he signed the deed Mr. Williams told him, "Everything is going to be just exactly like mine and your agreement."

Raymond Hooks, Sr. testified: "Well, sir, we was all there and we was all talking about the selling out of the Lem Hooks No. 1 well. So Mr. Williams said, 'Yeah, that's right, that's all you can sell, you can't sell something you don't have.' That's the understanding we had. Q. You didn't have anything but one well? A. One well, yes, sir."

Mrs. Lemuel Hooks testified: "Lemuel asked him, told him that's all he would sell, was the royalty interest in the one well only, and he said, 'Well, that's all that you can buy; that's all I am interested in.'"

We think the foregoing testimony adequately refutes the appellants' contentions of no evidence to support the jury's answers to the first two issues to the effect that Mr. Williams and the appellees intended and agreed to limit the royalty interests under the deeds to the Lem Hooks No. 1 well, the only well then existing on the tracts described in the conveyances. Layton v. Hall, 25 Tex. 204, 205; Reliance Insurance Co. v. Pruitt, Tex.Civ.App., 94 S.W.2d 833. Additionally, credence is lent the foregoing testimony by that of George Taylor to the effect that about two weeks prior to the execution of their deeds the appellees had visited in his office in an effort to see Mr. Williams, not then available, at which time they expressly stated their desires to sell their interests in the one well only.

■ We also believe the jury's fourth finding to the effect that Mr. Taylor made a mistake in failing to limit the conveyances as agreed between Williams and Lemuel Hooks has support in the evidence. Taylor agreed to purchase the interest of appellee Raymond Hooks, Sr., upon the conditions aforesaid. Admittedly, he was not at the bargaining table when the trade was concluded in Williams' office. His testimony, at several places in the record, is to the effect that at the time Williams instructed him to draw the deeds he told him what he was buying "the royalties". These instances of his testimony did not clarify whether Williams was buying the royalties under all three tracts of land or just those of the one well. From these expressions the jury could have properly concluded that Taylor erroneously assumed that Williams intended to buy the appellees' full royalty interests. He later testified that Williams told him that "he was buying the royalty that they had here in this land, under this land, and said, 'Here's the deeds'". The

deeds thus referred to were deeds from appellees' grantors conveying the same royalty interests in the same lands which the appellants contend were intended by the appellees' conveyances. Nevertheless the jury was at liberty to disregard this latter and more emphatic testimony and accept as true the former, and believe that it was only through Taylor's misinterpretation of Williams' first expressions that the deeds failed to reflect the true agreement of the parties. It makes no difference that Mr. Taylor believed he was purchasing the royalties under all the land for his wife. He had no separate agreement to that effect with either appellee. His agreement was with Williams for one-half the royalties Williams had bargained for. He did not purport nor contend to be entitled to any greater interest than one-half of that which the jury might find Williams had bargained for and so cast his lot in the trial of the case. In such circumstances it seems settled that a scrivener or draftsman's failure to embody the true agreement of the parties in an instrument affords grounds for its reformation. State v. Wales, Tex. Civ.App., 271 S.W.2d 728; State ex rel. Brauer v. City of Del Rio, Tex.Civ.App., 92 S.W.2d 287; Temple Electric Supply, Inc. v. Simmons, Tex.Civ.App., 328 S.W. 2d 931.

The appellants say there is no evidence to support the jury's answer to the third special issue above noted, and they urge that the following letter and transfer order signed by the appellee Lemuel Hooks constituted a ratification by him of his royalty deed to appellant Hattie Pearl Williams as a matter of law and that an identical letter and transfer order signed by appellee Raymond Hooks, Sr., likewise constituted a ratification of his royalty deed to appellant Ruby Mae Taylor:

"Beaumont, Texas
April 25, 1955

"Meredith &. Company
2117 Commerce Building
Houston 2, Texas.

"Re: Lem Hooks Well No. 1,
       Hardin County, Texas.

"Gentlemen:

"I have this day conveyed, effective with runs from and after April, 1955 at 7:00 A.M., the full royalty interest which I own in the lands covered by your division order, showing my unit royalty interest as .007448, to Hattie Pearl Williams.

"In due course you will be furnished with certified copies of the above conveyance but this letter is for the purpose of giving you immediate notice and to request that you mail to L. L. Williams, 1103 American National Bank Building, Beaumont, Texas, an appropriate division order conveying all of my interest to Hattie Pearl Williams.

"Yours very truly,

/s/ Lem Hooks"

"Transfer Order

"To: Meredith & Company
       Commerce Building
       Houston, 2, Texas

"The undersigned has sold and transferred an interest in wells one and up on that certain land covered by that certain oil, gas and mineral lease dated August 7, 1954, from Lem Hooks and wife, Daisy Hooks and Frank Hooks and wife, Patience Hooks as Lessor to Cyril G. Gradwohl, as lessee, covering lands situated in the F. P. Elliott League and the A. Hampton League, both situated in Hardin County, Texas, and being fully described in said lease which is recorded in Vol. 293, page 57, Deed Records of Hardin County, Texas, to which lease and the record thereof reference is hereby made for all purposes:

| Interest | To Whom Transferred | Post Office Address |
|---|---|---|
| .007448 | Hattie Pearl Williams | 3150 Robinhood Lane Beaumont, Texas |

"You will, therefore, credit him for oil, gas condensate and distillate run to the credit of said interest as outlined above from said wells under said lease, commencing at 7 A.M. on April 1, 1955.

"/s/ Lemuel Hooks
       Lemuel Hooks

"Witnesses:

       Nell Hooks /s/

       E. C. Gentry /s/"

As. an extension or continuation of. the transfer orders were stipulations and provisions in the form of division orders, some of which referred to the original division order alluded to in the appellees' letters. Such extension part of these transfer orders were signed respectively by the appellant-wives and constituted their acknowledgments to Meredith & Company of the interests they claimed, with authority to said company to purchase the production under such interests. Such acknowledgments and authorizations, the appellants' contentions to the contrary notwithstanding constituted contracts between said wives and said company and not with the appellees herein. For such reason it merits no further concern.

■ Ratification is. generally a matter of intent, with knowledge of the voidable nature of a prior act, to adopt such act as binding. We believe the trial judge correctly determined that an issue of fact had been raised for the jury's consideration due to the circumstances under which the foregoing instruments were executed by the appellees. The letters were drafted by Mr. Tayler and signed by the appellees simultaneously with the execution of the deeds. The transfer orders were executed by the appellees approximately six days later at the home of Lemuel Hooks, they believing that the witness, E. C. Gentry, who delivered them, an employee of Meredith & Company, was in fact employed by Mr. Williams. Their testimony, and the inferences therefrom, being in substance that they did not read the letters and transfer orders before signing them, is explained: By the fact they had known Mr. Williams and Mr. Tayler twenty-five and eight years respectively as friends and business associates; by testimony and inferences therefrom that they had relied on said appellants' accuracy and ability to correctly draw such instruments. Both testified that these instruments were signed in their belief that they were "part of the same deal," i. e., the conveyance of the one well inter-

est. The appellees' testimony is to the effect that they had no knowledge or reason to believe that their deeds reflected any more than they contend they should have, at the time these later instruments were signed. In fact the record reflects that approximately six months after the execution of their deeds, a second well was brought in on one of the. tracts at which time the appellees appeared in the office of Mr. Williams in an effort to sell the production under such second well, at which time Williams informed them for the first time that they had already conveyed their full royalty interests by their deeds under consideration.

■ Mr. Williams, whom it appears was accepted by the parties in the court below as well as here as an expert on oil and gas instruments, testified, in substance, that one observing the decimal fractional interest of .007448 in the transfer order would find it difficult to identify the same with the $\frac{1}{128}$th fractional interest referred to in the appellees' royalty deeds and the Gradwohl lease referred to in said transfer orders. He said, however, that he could sit down in his office and figure it out. We have, to the best of our ability, deciphered it and find there to be an unexplained difference of .0003645 between the two fractional interests just mentioned. These circumstances, together with many others which the appellees call attention to, prevent the conclusion that the deeds were ratified as a matter of law, and affords evidence to support the jury's finding that the appellees did not intend to ratify the deeds.

■ Other contentions, which are inappropriate to the refusal of the trial court to enter judgment notwithstanding the verdict of the jury, are urged by the appellants. For example, they contend that the jury's answers to the first, second, and fourth issues are not supported by that "clear" and "convincing" evidence required in proceedings of this nature. That such contentions, absent a motion for new trial,

are without merit, see Miller v. Miller, Tex. Civ.App., 274 S.W.2d 792 and cases cited.

Having concluded that the trial court correctly entered judgment for the appellees, the same is accordingly affirmed.