J. POPPERMAN V. REST HAVEN CEMETERY, INCORPORATED, ET AL

No. A-8164. Decided April 19, 1961
Rehearing overruled May 17, 1961
(345 S.W. 2d Series 715)

*R. O. Wyatt,* of Houston, for petitioner.

*Kennerly, Lesher & Eresch* and *Hamblen & Hamblen,* of Houston, for respondents.

MR. JUSTICE STEAKLEY delivered the opinion of the Court.

Petitioner sued respondents on two promissory notes of Rest Haven Cemetery, Inc., a dissolved corporation. The notes were dated November 1, 1947, and were payable to petitioner who was at the time president of the corporation and owner of all the stock of the corporation, other than nominal director shares. The relation of the parties to this suit with respect to the corporation and the shares of stock is as follows: In 1942, one F. Swirsky purchased the stock in the corporation from the individual respondents and executed a note in the sum of $25,000.00 in payment therefor; the note was payable in six years and the stock of the corporation was pledged as security. During this same year, petitioner acquired the stock in the corporation from Swirsky by assignment and held the stock until 1948 when it was transferred to the individual respondents in satisfaction of the amount due and owing on the note of $25,000.00 executed by F. Swirsky in the original purchase from the respondents.

Respondents had knowledge of petitioner's claims against the corporation at the time they acquired the stock in 1948. In 1950, respondents voluntarily dissolved the corporation.

Petitioner alleged that the notes in the principal sums of $8,466.94 and $11,967.95 represented, respectively, services performed for, and loans advanced to, the corporation by petitioner. Respondents answered by general denial and special answer alleging various defenses, such as that the notes "are without consideration and void"; that the officers who purportedly executed said notes on behalf of Rest Haven Cemetery, Inc., were without authority to execute the same, and that the execution of the notes was "an ultravires act." Further, that the transaction by which respondents reacquired the stock "constituted an accord and satisfaction"; that the notes were barred by limitation; that the corporation "was the alter ego" of petitioner; that the corporate resolutions authorizing the execution of the notes were "void and constituted a fraud upon such corporation"; that the notes represented transactions "necessitated as a result of gross negligence and imprudent management of the affairs of said corporation" by petitioner.

Upon trial before a jury, petitioner offered in evidence the corporate minutes and resolutions supporting the notes and, in turn, the notes themselves. The trial judge sustained objections to the admission in evidence of the notes and resolutions of the Board of Directors authorizing their execution, on the ground that one of the three directors, H. J. Hebert (petitioner being one of the other two directors), was not the owner of a share of stock as required by the by-laws of the corporation, wherefore the resolutions of the Board authorizing the execution of the notes, and the notes themselves, were without legal authority and void.

Petitioner took bills of exceptions to the ruling of the trial judge and established that H. J. Hebert had acted as a director of the corporation for four years (during which time the notes were authorized and executed); that he had participated in all the meetings of the Board of Directors during this time and was recognized at all times as a member of the Board by petitioner and the third director; that the minutes of the meeting of the Board authorizing the execution of the notes were signed by H. J. Hebert as vice-president and L. R. Jamail as secretary, both of whom voted for the resolutions authorizing the execution of the notes; and that the notes were signed "Rest Haven Cem-

etery, Inc.," by H. J. Hebert, vice-president, and attested by L. R. Jamail, secretary.

Following the action of the trial judge, petitioner sought to withdraw his announcement of ready, which was overruled; whereupon petitioner stated, "We have no further proof. We can't proceed."; and in response to the question from the court, "Do you now rest?", petitioner replied, "We are compelled to rest." Respondents then moved for an instructed verdict, which was granted by the trial court.

In affirming the trial court, the Court of Civil Appeals held that the notes were not the valid acts of the corporation because one of the directors authorizing their execution did not own stock in the corporation as required by its by-laws; that this director could not have *de facto* authority because his election was "absolutely void and not merely irregular or informal"; further, that petitioner had "the burden of showing fairness of the transaction surrounding the execution of the notes, and the benefits inuring to the corporation, separate and apart from the notes themselves." 341 S.W. 2d 476.

■ It is our opinion that the notes upon which petitioner declared were admissible in evidence, together with the supporting resolutions of the Board of Directors of the corporation, and that the lower courts erred in such respects.

The record before us does not disclose a state of facts under which the notes are void, or where the election of the directors was void, or which would render inapplicable the rule that the acts of a *de facto* director are binding upon the corporation. Compare Rutherford v. Watson, 52 S.W. 2d 85, er. ref., with *Franco-Texan Land Co. v. Laigle*, 59 Tex. 339. Moreover, the rule is well settled that a contract is binding upon the corporation where all of the stockhoders participated in the transaction. *Phil H. Pierce v. Rude*, 291 S.W. 974, er. dism.; *Lybrand v. Miller-Lybrand Co.*, 75 S.W. 2d 286; *Landa v. Whitfield*, 131 S.W. 2d 310, er. ref.; *Burger v. Western Sand and Gravel Co.*, 237 S.W. 2d 725, er. ref., n.r.e. It is also well settled that officers and directors of a corporation are not disqualified from dealing with the corporation. *Tenison v. Patton*, 95 Tex. 284, 67 S.W. 92; *Zorn v. Brooks*, 125 Tex. 614, 83 S.W. 2d 949; *Wolfe v. State Investment Co.*, 95 S.W. 2d 511, er. dism.; *Lybrand v. Miller-Lybrand Co.* and *Phil H. Pierce v. Rude*, supra.

■ Closely related to the foregoing principles is the well-established rule that transactions between an officer or director and the corporation are subject to strict scrutiny; it was stated in *Zorn v. Brooks,* supra, "that a contract between a corporation and one or all of its officers and directors is not void *per se,* but that it may be avoided for unfairness or fraud." Previously, this court in *Tenison v. Patton,* supra, discussed at some length the problem of contracts between officers and directors and the corporation itself, and recognized that such contracts are binding where the contracting director establishes the fairness of the transaction to the corporation. See also *Texas Auto Co. v. Arbetter,* 1 S.W. 2d 334, er. dism.; and *Felty v. National Oil Company of Texas,* 155 S.W. 2d 656.

Respondents contend, particularly in oral argument, that notwithstanding the error of the trial court in refusing admission in evidence of the notes and supporting corporate resolutions, we should render judgment in their favor because petitioner did not make proof in his bills of exceptions of the fairness to the corporation of the transactions represented by the notes. It is to be noted that the case was being tried before a jury; that petitioner could not have gone to the jury, or been able to recover in any event, in the light of the action of the trial court in denying admission of the notes in evidence; and that the only purpose which would have been served by petitioner going further in his bills of exceptions and establishing the fairness of the transactions would have been to prevent rendition of judgment against him on appeal from the ruling of the trial court.

■ We hold that the burden of establishing the fairness of the transaction to the corporation is upon petitioner, and in the interest of fairness and justice we will reverse and remand to afford petitioner an opportunity to prove his case. *Rule 505, Texas Rules of Civil Procedure;* see *City of San Antonio v. Pigeonhole Parking of Texas,* 158 Tex. 318, 311 S.W. 2d 218; *Aetna Insurance Co. v. Klein,* 160 Tex. 61, 325 S.W. 2d 376.

The judgments of the Court of Civil Appeals and the trial court are reversed, and the cause is remanded to the trial court for retrial.