**LAKELAND PROPERTIES, INC.,**
Appellant,

v.

**Ruth Vivian MANGUM, Appellee.**

No. 7557.

Court of Civil Appeals of Texas, Beaumont.

April 25, 1974.

Rehearing Denied May 16, 1974.

Jones, Tanner & Pace, Livingston, Robert N. Hinton, Jr., Houston, for appellant.

Clayton Malone, Livingston, for appellee.

DIES, Chief Justice.

In June, 1972, James L. Dannheim, Derrill G. Whitten, and Lakeland Properties, Inc., as plaintiffs, filed suit against Ruth Vivian Mangum, as defendant for "actionable fraud." They alleged that during the months of May and June, 1969, Dannheim, Whitten, and another, had discussions with Mangum concerning a land venture near Lake Livingston. The defendant Mangum

represented she knew of an 80 acre tract which could be bought for $50,000 and she would contribute merchantable timber worth $18,000 as her share of the venture. In August, 1969, the parties formed a corporation in which 36% of the stock (360,000 shares) was owned by Mangum, and substantial dividends were paid the shareholders through May, 1971. On May 27, 1971, Lakeland Properties, Inc., agreed to purchase the Mangum stock, paying some cash and giving her a note for $54,000.

Plaintiffs alleged that this note was given in reliance that Mangum had deeded the timber to the owners of the 80 acre tract, which was false and fraudulent. In addition to monetary damages, plaintiffs prayed for an injunction to prevent Mangum from negotiating the note, and in their prayers asked for the $54,000 due on the note.

By a first supplemental petition, plaintiffs alleged that Mangum falsely represented the cost of the 80 acre tract as being $50,000, whereas in truth and in fact it was $32,000.

Trial was to a jury which found among other things that defendant Mangum represented to her partners that the true cost of the 80 acres was $50,000; that this was false and known by her to be false; relied on by Dannheim and Whitten; but that they possessed knowledge prior to December 31, 1969, as would incite an inquiry in the mind of an ordinarily prudent person to ascertain the true purchase price of the 80 acres; that defendant Mangum's misrepresentations could have been discovered by them by the exercise of reasonable diligence; and they failed to find she represented she was contributing $18,000 merchantable timber for her interest. The jury further found that she represented to Lakeland Properties, Inc., that the purchase price of the 80 acres was $50,000, but they failed to find this was false.

A take nothing judgment was rendered by the court on October 27, 1972. The judgment recited:

"The court finds that the jury verdict is to the effect that the plaintiffs were precluded from any recovery because the time for this cause of action had run under the Statute of Limitations. . . . that the Plaintiffs possessed such knowledge prior to December 31, 1969 as would have incited inquiry on the part of the Plaintiffs to determine the actual purchase price of the subject land and that the Plaintiffs did not exercise reasonable diligence to determine the true purchase price of the subject land."

This case was appealed, and we affirmed. Dannheim v. Mangum, 498 S.W. 2d 224 (Tex.Civ.App., Beaumont, 1973, no writ).

The case we now review was filed November 3, 1972, in the same District Court that rendered the above-referred to judgment by Ruth Vivian Mangum, plaintiff, against Lakeland Properties, Inc., defendant, on the $54,000 note previously given by Lakeland in partial payment of the Mangum stock.

Trial was again to a jury which found that Ruth V. Mangum was issued 360,000 shares of stock in Lakeland on March 12, 1970, in exchange for the $54,000 note dated June 25, 1971, that the stock was "something of value"; they failed to find Ruth Mangum obtained this note by representing to Lakeland that she had given something of value for her stock. Judgment for Ruth Mangum on the note plus interest, plus attorneys' fees followed on August 9, 1973, from which Lakeland perfects this appeal.

After the selection of the jury, but before any evidence was adduced, plaintiff Mangum filed a motion to sever asking "that the pleadings set out in the Defendants Answer having to do with tort in the nature of fraud be severed as a separate

suit," giving as her reason that this issue had been litigated in the previous lawsuit.

This motion was sustained by the court, stating as follows:

"The case at bar, however, we have a different slant on it, in that the case, 8067, was filed raising the question of fraud, tort action, everything else, and it was tried extensively on that question. At that time it was submitted to a jury, and the jury answered certain issues, the case was carried to the Court of Civil Appeals in Beaumont, they affirmed it, there isn't a final judgment on it, but in the light of the record at this time I think the Court, the Trial Court, must look to that holding thus far. The jury finding in response to Special Issues in that case conclusively and affirmatively found there was no fraud on the part of the conveyance, on the part of Mrs. Mangum to the corporation, which is the defendants in this cause of action in Cause No. 8110. The jury's finding in that cause of action, where the question of fraud was raised and an issue submitted, found there was no cause of action on the element of fraud, therefore, I feel that it would be inadvisable for this Court now to go back into or permit going back into those questions or those elements of fraud, No. 1. A corporation issued capital stock for land, the capital stock was issued, a certain percentage, for a certain percentage of the capital stock. Later on, I take the position that there's ratification on the part of the corporation, in that the stock and land that was conveyed and the values of stock issued, the ratification of it, to permit now the defensive questions of going into all the elements of fraud that were raised in the original case, Cause No. 8067, would be a violation of the rules to the point that it would be an endless matter because every time a case came up, once it had been adjudicated, the same element of fraud could be raised. I think the element of fraud was thoroughly, completely, and extensively weighed and tried in Cause No. 8067 in which the jury found there was no fraud.

"The Court is sustaining this motion up to the point that you will not be privileged to go back into any question of fraud that was covered by the original cause of action, 8067, which was submitted to the jury in that cause of action. I think you have a different question here, I think you have a question of contract; that if there had been no question of fraud raised in the prior pleadings, the prior case, and untried, then I think you would be correct in your position, that you would have a defensive issue on fraud to raise in that point. In response to Special Issues that were raised in Cause No. 8067, after the corporation, the issue of fraud was submitted to the jury as to Derrill G. Whitten and James L. Dannheim, Special Issue 11, as to one of the defensive issues that you have raised here: 'Do you find from a preponderance that Ruth Vivian Mangum represented to James L. Dannheim and Darrell G. Whitten that she was contributing $18,000 worth of merchantable timber for her thirty-six per cent interest in the partnership for the purchase of eighty acres of land?', the jury found she did not. I might call attention that this case on appeal, there was no question raised on some of those issues. The only three points raised was no evidence rule.

"The next issue that I think the Court would have to look to as to making a determination on this, Special Issue No. 20: 'Do you find from a preponderance of the evidence that Ruth Vivian Mangum represented to Lakeland Properties, Incorporated, the true purchase price of eighty acres of land was $50,000 at the time that Lakeland Properties, Incorporated, issued thirty-six per cent of its stock?', and they said: 'We do.'

"The following issue: 'Do you find from a preponderance of the evidence

that such representation of Ruth Vivian Mangum was false?', and: 'We do not.'

"Special Issue No. 28: 'Do you find from a preponderance of the evidence that Ruth Vivian Mangum represented to Lakeland Properties, Incorporated, that she had contributed $18,000 worth of merchantable timber for her thirty-six per cent interest in the partnership for the purchase of eighty acres of land at the time that Lakeland Properties, Incorporated issued thirty-six per cent of its stock to her?' The answer by the jury: 'We do not.'

"Further on that same point, Special Issue No. 37: 'Do you find from a preponderance that after June the 10th, 1969, Ruth Vivian Mangum made additional representations to James L. Dannheim and Derrill G. Whitten that the true purchase price of the land, of the said eighty acres of land, was $50,000?' 'We do not.'

"Special Issue No. 43: 'Do you find from a preponderance of the evidence,' predicated on 20, 'that after June the 10th, '69, Ruth Vivian Mangum made additional representations to Lakeland Properties, Incorporated, that the true purchase price of the said eighty acres of land was $50,000?', and it says: 'We do not.'

"Now, gentlemen, that was questions, a question of fraud, which they went into extensively in the original trial in which there was a finding that there was no question of fraud. In the case that went up to the Court of Civil Appeals, —Give me that opinion.

"MR. McCLENDON: Your Honor, would you like to use this copy?

"THE COURT: Is that a copy of the original opinion from the Court of Civil Appeals? Well, he'll be here with the original in a moment. He'll be here in a moment.

"(Reading aloud from the opinion referres [sic] to.)

"Now, the case has been affirmed and the opinion delivered on July 19th of 1973. Gentlemen, to permit a defensive issue that has already been tried and passed on by a jury as to the element of fraud prior to the issuance of this stock, it seems to me would be an endless and prohibitive permission on the part of the Court to rehash after one jury has already passed on the very same issues that could be raised at this time. Therefore, I am sustaining the motion and limiting the defensive issues on fraud to and including the date of the issuance of the stock, I mean the capital stock, or limiting it to anything that might have been done as a corporation, as an element of fraud to the corporation.

"I find some cases holding that where ratification has been made, that it's conclusive. I further take the position that the ratification of 1971 on the issue of, upon the purchase of the stock, outstanding stock, of Vivian Mangum and Burchfield, almost is a complete ratification of their act of 1969 at the date of the issuance of the stock. The presumption would be that the corporation gave full value and that they received full value for the issuance of their corporate stock. Sustained up to that point.

"Counsel for the defendant, you may have a bill for all of the rulings of the Court."

Appellant's first seven points attack the trial court's action in granting the motion for severance. It says that Rule 41 of Texas Rules of Civil Procedure is intended to correct a mis-joinder or non-joinder; that the court erred in basing its order on res judicata or ratification which was not affirmatively plead; appellee had no pleadings to limit the defense of fraud to occurrences after March 12, 1970; that this was an arbitrary date; and resulted in preventing Lakeland from proving Mangum was not a holder in due course of the note. The date of March 12, 1970, was the date

the stock of Lakeland Properties, Inc., was issued.

■ As previously noted in this opinion, the same trial judge granted the "motion to sever" as had tried the previous case. He certainly could take judicial notice of this previous case without formal pleadings, since it involved the same subject matter and some of the identical parties. Gardner v. Martin, 162 Tex. 156, 345 S. W.2d 274, 276 (1961):

> "It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties." (Citing authorities) (See authorities cited in 23 Tex.Jur.2d, Evidence, §§ 26, 47.)

■ The mistaken designation of Appellee's motion as "a motion to sever" is not fatal under our practice. Rule 71 of T.R. C.P. See Texas Highway Department v. Jarrell, 418 S.W.2d 486 (Tex.1967).

As previously noted, in the first lawsuit Lakeland sought judgment for $54,000 due on the note, alleging the same "fraudulent" representations which it now seeks to relitigate in this controversy. In the case of Dannheim and Whitten, while the jury supported their contentions, it found they were barred by limitations. In the case of our appellant here, Lakeland, while the jury found that Mangum represented the true purchase price of the 80 acres as being $50,000, they failed to find (S.I. 21) that this was false. And they further failed to find (S.I. 28) that she had represented to Lakeland that she had contributed $18,000 worth of merchantable timber for her interest in the 80 acres of land.

■ Thus, we conclude that the contention of fraud by Lakeland has already been litigated, and the court was correct in restricting any such proof to a point in time after the stock was issued (March 12, 1970).

Appellant's other points of error only present various shades of this same contention. All points of error are overruled and the judgment of the trial court is affirmed.

STEPHENSON, Justice (concurring).

I agree with Chief Justice Dies that this case should be affirmed.

The two reasons given in the dissenting opinion for reversing this case come solely from the fertile mind of Associate Justice Keith and are *not* raised by a point of error, or the statement or argument under any point of error.

In spite of the assertion in the dissenting opinion that "[p]oints three and four go to the heart of plaintiff's case in her suit upon the promissory note," I do not find that to be a fair appraisal of those points of error. Appellant's points of error read as follows:

#### "Third Point

"The judgment of the trial court is fundamentally erroneous in that the motion to sever was granted on the basis of ratification, a theory which was not affirmatively plead as a ground for judgment.

#### "Fourth Point

"The trial court erred in granting the motion to sever on the basis of ratification in that appellee did not show that the appellant Lakeland Properties, Inc. had knowledge of the actual terms of the transaction which it allegedly ratified."

Following a brief mention of ratification, the dissenting opinion, without further explanation, reaches the matter of the failure of Mrs. Mangum to plead and prove that the transaction was fair and just to the corporation.

I feel that it is fair to make the statement that appellant does not raise that

question of law in its points three and four or in any other point of error. In fact, appellant comes no closer to that subject anywhere in its brief, than the citation of the *Popperman Case* for the proposition that "[t]he director seeking recovery on the basis of ratification has the burden of proving the necessary element of that theory." There is not a word in appellant's brief suggesting it was error for the trial court to allow plaintiff to recover because she failed to plead and prove the transaction was fair and just to the corporation.

The dissenting opinion makes no claim that such failure of pleading and proof raises a matter of fundamental error, but only that the question is raised by appellant's points three and four. I here cite by reference, the cases cited in the dissenting opinion for the proposition that the failure to present a point of error complaining of the trial court's action precludes appellate review, unless the error is fundamental.

Rule 97(a) is discussed at length in the dissenting opinion, even though the admission is made that Lakeland does not raise that question by any of its points of error. However, the suggestion is made that the general rule is of doubtful validity when Rule 97(a) is involved, citing Griffin v. Holiday Inns of America, 496 S.W.2d 535 (Tex.1973). In my humble opinion, the *Griffin Case* raises no question as to the validity of the general rule.

The situation is reversed in the *Griffin Case,* and the *appealing* party is the one who should have filed the compulsory counter claim. The *Griffin Case* says, in effect, that the failure to comply with Rule 97(a) may be considered by the Supreme Court as a *reason* for upholding the action of the courts below, in passing upon the res judicata question. *No court* (including *Griffin*) has said that an appellate court may consider the failure to comply with

Rule 97(a) as a ground for *reversal* in the absence of a point of error.

KEITH, Justice (dissenting).

I respectfully dissent. The majority, entranced by the trial court's colloquy with counsel while passing upon plaintiff's "motion to sever", has completely overlooked the controlling effect of Rule 97(a): *this suit was a compulsory counterclaim in the first proceeding.* In order to demonstrate such fact, it is necessary that I add to the already lengthy statement.

Lakeland Properties, Inc., was a party plaintiff in the original suit, having sought damages from Mrs. Mangum for fraud in the inducement of the execution and delivery of the promissory note now involved in this cause. It failed to carry its burden of persuasion and did not obtain favorable answers from the jury to the issues on fraud and the judgment went against it upon that trial. Although it duly appealed from the judgment, it assigned no points of error and the judgment was affirmed. Dannheim v. Mangum, 498 S.W.2d 224 (Tex. Civ.App., Beaumont, 1973, no writ).

Mrs. Mangum did not file a cross-action upon the note in the original suit despite the requirement of Rule 97(a), even though the note had been in default for several months before the suit went to trial. Instead, a week after the order overruling Lakeland's motion for new trial in the first suit, she instituted this suit to recover on the note. Lakeland answered the present suit with a verified pleading setting up the prior litigation and contending that the present suit on the note should have been asserted as a compulsory counterclaim under Rule 97(a), and alleged the concurring elements necessary for making the counterclaim compulsory. See: 2 McDonald, Texas Civil Practice (1970 Rev.Vol.) § 7.49, p. 283. Alternatively, Lakeland pleaded the former litigation was res judicata of the present suit.[1]

---

1. Our judgment on the first appeal was not final at the time of the filing of the plea of res judicata and did not become final until several days after the completion of the trial

of the second suit. See 34 Tex.Jur.2d, Judgments, § 472, pp. 521, 522 (1962), and Annotation, 9 A.L.R.2d 984, 994 (1950), for a discussion of the Texas cases on the subject.

No formal order was entered disposing of the plea of compulsory counterclaim, but our statement of facts reveals tht the plea was presented, argued, overruled, and an exception duly noted. This was sufficient to preserve the question for review. See and compare Marek v. Baylor County, 430 S.W.2d 220, 222 (Tex.Civ.App., Eastland, 1968, error ref. n. r. e.); Webb v. Mitchell, 371 S.W.2d 754, 761 (Tex.Civ.App., Houston, 1963, no writ).

Unfortunately, Lakeland does not present a direct challenge to this ruling by any of its points of error. Generally, it is mandatory that an appellant comply substantially with the briefing rules in order to gain appellate review. Cf. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Leal v. Aluminum Company of America, 443 S.W.2d 942, 945–946 (Tex. Civ.App., Corpus Christi, 1969, no writ).

Indeed, in State Farm Mutual Automobile Ins. Co. v. Cowley, 468 S.W.2d 353, 354 (Tex.1971), the Court held that the failure to present a point of error complaining of the trial court's action precludes appellate review, unless the error is fundamental. Whether Rule 97(a) is applicable to a particular case would not ordinarily be considered to be fundamental error. Cf. McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957).

But this general rule is of doubtful validity when Rule 97(a) is involved. Griffin v. Holiday Inns of America, 496 S.W. 2d 535 (Tex.1973).[2] The time and place for Mrs. Mangum to have sought recovery upon the promissory note was in the original litigation. If we can reach the matter, a rendition of the judgment is required.

I also disagree with the majority's conclusion stated in the last paragraph that "Appellants' other points of error only present various shades of this same contention." The third and fourth points of error, so summarily rejected, are entitled to consideration under the liberalized rules enunciated in Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943): "[T]he Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder." So tested, I am of the opinion that we are authorized to consider such points notwithstanding each refers to the error of the court in sustaining the "motion to sever." The presentation under these points is much broader than the opening phrases therein.

Points three and four go to the heart of plaintiff's case in her suit upon the promissory note. On May 27, 1971, plaintiff was the owner and holder of 36 percent of the outstanding stock of defendant corporation and was a member and chairman of the Board of Directors. On that date she entered into a contract with Dannheim and Whitten, both directors and president and secretary, respectively, on behalf of the corporation, whereby the corporation agreed to redeem her stock. Pursuant to this agreement, she received $36,000 in cash from the corporation and it executed and delivered its promissory note to her in the principal sum of $54,000, payable on June 25, 1972, bearing interest from date until paid at the rate of 8 percent.

As indicated earlier, the corporation pleaded fraud not only in the original issuance of the stock, but in the contract to repurchase or redeem. It also pleaded a complete lack of consideration supporting the note. Testimony tending to support each of these defenses was tendered by the defendant and excluded by the trial court because of its earlier action upon the "motion to sever." Such testimony is now in

2. The dissent of Justice Johnson in *Griffin*, supra, indicates that the controlling effect of Rule 97(a) was raised by the Supreme Court sua sponte. (496 S.W.2d at 539)

our record in the form of bills of exception.[3]

Furthermore, the trial court's action in excluding the evidence was based, in part at least, upon the concept that the corporation had ratified the entire transaction whereby Mrs. Mangum had secured her original interest in the land which was eventually transmuted into the stock and finally into the note now in suit. Plaintiff had not pleaded ratification and this theory of the case was injected into the trial by the court.

In Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949, 951 (1935), the Court reviewed the authorities in detail and came to this conclusion:

> "The authorities generally are in complete accord in declaring that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud. . . . This is the settled rule in Texas." (citations omitted)

A contract which is merely voidable, may be ratified and the right to annul may be lost. Missouri Pac. Ry. Co. v. Brazil, 72 Tex. 233, 10 S.W. 403, 406 (1888); Gaston v. Copeland, 335 S.W.2d 406, 409 (Tex.Civ.App., Amarillo, 1960, error ref. n.r.e.).

Thus, the contractual agreement between Mrs. Mangum and Lakeland, whereby the corporation was to redeem her shares through the payment of money and the issuance of the note, was—at best—a voidable transaction at the option of the corporation. In order to prevail in her suit upon the contract, which includes the note in issue, it was Mrs. Mangum's burden, as expressed in Tenison v. Patton, 95 Tex. 284, 67 S.W. 92, 95 (1902), to make "a full disclosure of all facts known to him about the subject, takes no advantage of his position, deals honestly and openly, and concludes a contract fair and beneficial to the company."

The latest expression of our Supreme Court on the subject is that of Justice Steakley in Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715, 717 (1961), from which this quotation is taken:

> "Closely related to the foregoing principles is the well-established rule that transactions between an officer or director and the corporation are subject to strict scrutiny; it was stated in Zorn v. Brooks, supra, 'that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud.' [125 Tex. 614, 83 S.W.2d 951] Previously, this court in Tenison v. Patton, supra [95 Tex. 284, 67 S.W. 92], discussed at some length the problem of contracts between officers and directors and the corporation itself, and recognized that such contracts are binding *where the contracting director establishes* the fairness of the transaction to the corporation. See also Texas Auto Co. v. Arbetter, Tex.Civ.App., 1 S.W.2d 334, er.

---

3. It appears from our record that the trial court treated the "motion to sever" as a motion in limine designed to suppress evidence heard upon the former trial upon issues therein determined by the jury.

The action of a trial court in ruling upon a motion in limine is necessarily preliminary in nature and does not, in and of itself, reflect error. This is true whether the action is in granting the motion or in overruling it. In order for the trial court's action to be tested upon appeal, it must be shown that evidence which was tendered was introduced or excluded (as the case may be) over an appropriate objection timely interposed. The action of the court in so admitting or excluding the evidence will then be considered by the appellate court under the usual rules governing the admission or exclusion of evidence. If the action of the trial court is held to be error, the court will then determine whether such error amounted to reversible error. See generally: Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366 (1962); Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963); State v. Cave, 430 S.W.2d 692, 694 (Tex. Civ.App., Austin, 1968, no writ); State v. Lock, 468 S.W.2d 560, 565 (Tex.Civ.App., 1971, Beaumont, error ref. n.r.e.).

dism.; and Felty v. National Oil Company of Texas, Tex.Civ.App., 155 S.W.2d 656." (emphasis supplied)

This holding was reinforced by the Court when it said: "We hold that the burden of establishing the fairness of the transaction to the corporation is upon petitioner"—Mrs. Mangum in our case. The reason for the rule, as stated in Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 431 (1949), is that corporate directors occupy the position of a fiduciary toward the corporation.

In the case which we now review, Mrs. Mangum neither pleaded nor proved that the transaction was fair and just to the corporation, nor did she make a full disclosure of all the facts known to her about the subject, as required in *Tenison,* supra. Yet, the majority permits her to recover on the note.

Mrs. Mangum, relying upon the court-conceived theory of ratification, was successful in excluding evidence tendered by the defendant corporation which would have raised the issue of unfairness. Her belated reliance upon the theory of ratification likewise falls under the same theory and line of authorities. "Ratification is generally a matter of intent, with knowledge of the voidable nature of a prior act, to adopt such act as binding." Williams v. Hooks, 333 S.W.2d 184, 189 (Tex.Civ.App., Beaumont, 1960, no writ).

Just as Mrs. Mangum labored under the burden of proving fairness (under *Popperman,* supra), she had the burden of showing ratification was done with full knowledge of all of the pertinent facts. Leonard v. Hare, 161 Tex. 28, 336 S.W.2d 619, 621 (1960). She did not discharge either burden by pleading or by proof.

Considering the record as a whole, including the unsatisfactory condition of the pleadings and the proof on the critical issue of fairness and ratification, it is apparent that the case has not been fully developed in accordance with the applicable rules controlling this type of suit in the posture in which it was presented to the trial court. I would sustain points three and four; and, in the interest of justice, reverse the judgment below and remand the cause for further proceedings in accordance with the applicable procedural and substantive rules governing this cause, only some of which have been discussed herein.