**Morris L. ROGERS, Appellant,**

v.

**Thomas W. BUTLER, Individually, and Thomas W. Butler, d/b/a Fiesta International, Inc., Appellee.**

No. 8523.

Court of Civil Appeals of Texas, Texarkana.

Feb. 28, 1978.

Rehearing Denied March 28, 1978.

Mark C. Hall, Lubbock, for appellant.

Donald M. Hunt, Key, Carr, Evans & Fouts, Lubbock, for appellee.

ODEN, Justice.

Appellant, Morris L. Rogers (Rogers), filed suit against appellee, Thomas W. Butler (Butler), seeking an accounting, damages and to impress a constructive trust on certain real property formerly owned by Fiesta International, Inc. Butler pleaded in defense that Fiesta International, Inc., the business Rogers desired an accounting of, was a corporation and Rogers was estopped to deny either the corporate existence or to complain of any act in which he participated. Trial was to a jury. After each side had rested the court instructed a verdict and a take nothing judgment was entered against Rogers.

■ In reviewing an instructed verdict case, an appellate court must consider the evidence in the aspect most favorable to the cause of the party against whom the verdict was instructed, who in this case is Rogers. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). Considered in the aspect most favorable to Rogers, there is evidence that in the summer of 1972 Rogers and B. M. Barron (Barron) decided to open a nightclub in Lubbock, Texas. They caused a nonexistent corporation to enter into a contract of sale to purchase a building and the lot upon which it was situated. Fiesta International Corporation was the purchaser named in the contract of sale; however, no such corporation existed. Rogers and Barron held themselves out as the president and secretary, respectively, of the nonexistent corporation and personally guaranteed its performance. Rogers and Barron, as president and secretary, respectively, executed the note evidencing the obligation to pay the full purchase price of the real property. The note was personally guaranteed

by Rogers and Barron. A checking account was opened in the name of Fiesta International, Inc., and a telephone listing was procured in such name. Fiesta International, Inc., liked Fiesta International Corporation, was nonexistent. Rogers and Barron were unable to secure the requisite financing to start the business on their own whereupon they contacted Butler. Butler agreed to contributed $5,000.00 as capital and loan an additional $10,000.00. Rogers, Barron and Butler entered into an agreement styled "Venture Agreement" under the terms of which Butler agreed to advance the $15,000.00 and Rogers and Barron agreed, among other things, to transfer the contract of sale to an operating entity which would be either a corporation or a limited partnership. Butler was to be the limited partner in the event the operating vehicle was a limited partnership. In October, 1972, the parties to the Venture Agreement caused Fiesta International, Inc. to be incorporated. Rogers and Barron were both officers and directors. Butler was neither an officer nor a director. Shares of stock were never issued. A voting trust agreement was prepared under the terms of which Butler would hold all stock in trust until his loans were repaid; however, the voting trust agreement was not executed. In the fall of 1972, Barron decided to dispose of his interest in the business. Rogers and Butler both objected on the grounds that Barron did not have an equity to sell and Butler had not been repaid. Ultimately, Barron relinquished his rights in the business in consideration of $1,500.00 paid to him by Butler. The business subsisted on loans from Butler. These loans eventually exceeded $70,000.00 in the aggregate. Rogers invested little, if any, money in the business. However, he clearly managed it. In February, 1973, Butler advised that he would not continue to loan money to the business. At that time, to facilitate a sale of the business, Fiesta International Corporation assigned its interest in the contract of sale to Fiesta International, Inc. Rogers executed the assignment as president of both corporations. The business could not be sold and in March 1973, Butler advised

that he would not make any additional loans unless he owned the real property. Rogers agreed and Butler purchased the real property in his individual capacity. This was effected by Fiesta International, Inc. entering into a rescission agreement with the seller whereby the contract of sale was cancelled and the seller delivering a deed to Butler. Butler made a considerable down payment on the building and was personally liable on the deferred purchase money note. Rogers executed the rescission agreement as president of Fiesta International, Inc. Butler leased the real property to Fiesta International, Inc. for a year. Rogers executed the lease as president of Fiesta International, Inc. Butler agreed, orally, that he would transfer the real property to Fiesta International, Inc. when the purchase price was paid. (This evidence is controverted; however, the evidence is viewed in the aspect most favorable to Rogers.) Fiesta International, Inc. defaulted in the payment of the monthly rentals whereupon Butler terminated the lease with Fiesta International, Inc. and leased the real property to a third party. The suit ensued shortly thereafter.

■ Rogers contends that the evidence, when viewed in the aspect most favorable to him, would support the submission of an issue inquiring if Rogers and Butler were either partners or joint venturers at the time Butler acquired title to the building. We do not agree. The burden of proof to establish the existence of a partnership or a joint venture relationship was on Rogers and the intention of the parties is the real test as to the existence of such relationships. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1946); *Holman v. Dow*, 467 S.W.2d 547 (Tex.Civ.App. Beaumont 1971, writ ref'd n. r. e.). The evidence in the case establishes that neither party intended to be a partner or a joint venturer with the other. The agreement preceding the incorporation of Fiesta International, Inc. specifically provided that the contemplated business would be operated as either a corporation or a limited partnership. The parties

elected to incorporate and following the date Fiesta International, Inc. came into existence all business was transacted by that entity. In fact, Rogers was transacting business in the names of both Fiesta International Corporation and Fiesta International, Inc. before he approached Butler with a view toward obtaining financing for the contemplated business. The only duty imposed upon Butler by the document styled "Venture Agreement" was to contribute and loan an aggregate of $15,000.00 to either a corporation or a limited partnership. He performed this duty and more inasmuch as he ultimately loaned the corporation in excess of $70,000.00. Rogers concedes that everything once owned by the parties as individuals or as joint venturers was owned by Fiesta International, Inc. after it came into existence. At this time the joint venture, if there ever was one, terminated under the terms of the "Venture Agreement." Thereafter, the parties neither intended to be partners nor joint venturers. Rogers and Butler were stockholders in Fiesta International, Inc., even though certificates of stock were never issued. *Greenspun v. Greenspun,* 194 S.W.2d 134 (Tex.Civ.App. Fort Worth 1946), affm'd., 145 Tex. 374, 198 S.W.2d 82 (1946). Butler's and Rogers' relationship was that of shareholders in a corporation rather than either partners or joint venturers.

■ Rogers next contends that the voting trust agreement, which was prepared but unexecuted, created a partnership. A voting trust agreement to be operative must be signed. Tex.Bus.Corp.Act Ann. art. 2.30. There is no evidence that Butler, as trustee under the proposed voting trust, ever attempted to act as trustee. The stock which should have been issued could not have been held by Butler as trustee under a voting trust until a voting trust agreement was executed by all parties. Since there was no voting trust agreement, Rogers' point with respect thereto will be overruled. In any event, the existence of a voting trust agreement is immaterial inasmuch as we have already held that Rogers and Butler did not intend to be partners.

Rogers' Point of Error No. 3 pertains to the duty Butler would have owed him had their relationship been that of either partners or joint venturers. This point is immaterial inasmuch as we have already held there was no such relationship.

■ Assuming that Butler was a de facto officer and director, which we are not prepared to do, the only duty he would owe in connection with the purchase of the building would be to the corporation, not Rogers. That duty would be to act fairly and free of fraud. A contract between a corporation and one or all of its officers is not void per se but may be avoided for unfairness and fraud. *Zorn v. Brooks,* 125 Tex. 614, 83 S.W.2d 949 (1935); *Popperman v. Rest Haven Cemetery, Inc.,* 162 Tex. 255, 345 S.W.2d 715 (1961); *Western Inn Corporation v. Heyl,* 452 S.W.2d 752 (Tex.Civ. App. Fort Worth 1970, writ ref'd n. r. e.). There is no evidence in the record that Butler acted unfairly or fraudulently when he purchased the real property. Fiesta International, Inc. cannot complain of the sale because all of its shareholders participated therein. *Popperman v. Rest Haven Cemetery, Inc.,* supra. Butler and Rogers were the only shareholders at the time Butler purchased the real property and they both participated in the sale and purchase. Rogers' participation was in his capacity as an officer, director and shareholder of Fiesta International, Inc. Butler's participation as a shareholder of Fiesta International, Inc. is implied inasmuch as he purchased the real property.

■ Rogers next contends that the court should impress a constructive trust on the real property because of certain oral statements attributed to Butler. The evidence viewed in the most favorable aspect to Rogers established that Butler agreed to reconvey the building to Fiesta International, Inc. when the purchase money debt was paid. A constructive trust escapes the unquestioned general rule that land titles must not rest in parol but before the court will impress a constructive trust on land there must be strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the

wrongdoer. *Rankin v. Naftalis*, 21 Tex. Sup.Ct.Jour. 9 (Oct. 5, 1977). The evidence establishes that the promise was made in favor of Fiesta International, Inc. The corporation is not a party to this case. Furthermore, there is no evidence which would support a finding that Butler acted unfairly or that he was unjustly enriched. The trial court correctly held that Rogers was not entitled to impress a constructive trust on the real property.

Rogers' last complaint is lodged against the court granting Butler's motion in limine that Rogers be prohibited from introducing an appraisal report into evidence. The erroneous granting of a motion in limine is not of itself reversible error. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963); *Zoner v. Hertz Equipment Rental Corporation*, 523 S.W.2d 765 (Tex.Civ.App. Houston—14th Dist. 1975, writ ref'd n. r. e.). Error is not shown in the exclusion of evidence unless the record clearly shows by bill of exception or otherwise what the evidence would have been if admitted. *Central Power & Light Company v. Martinez*, 493 S.W.2d 903 (Tex.Civ.App. Corpus Christi 1973, no writ). The record in this case does not disclose what the evidence would have been and Rogers' point is overruled.

The judgment of the trial court is affirmed.