**GREATER FORT WORTH & TARRANT COUNTY COMMUNITY ACTION AGENCY, Appellant,**

v.

**George MIMS, Appellee.**

**No. 18548.**

Court of Civil Appeals of Texas, Fort Worth.

July 2, 1981.

Rehearing Denied July 23, 1981.

**944**

Simon & Simon, and Harold D. Hammett, Fort Worth (on appeal only) for appellant.

Salvant & Fleming, and Donald J. Fleming, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

The Board of Directors of Greater Fort Worth and Tarrant County Community Action Agency (CAA) allegedly fired George Mims, its Executive Director. Mims, construing the action of the Board as violative of the constitution and by-laws of CAA, refused to vacate. CAA then filed this suit, seeking a temporary and permanent injunction against Mims. Mims answered by way of general denial and alleging illegality of the action of plaintiff's Board of Directors. Mims also asked that CAA's request for injunction be denied, that he be ordered to return to his position as Executive Director, and additionally that he be "reimbursed for all lost wages and other employment benefits occasioned by his absence from said employment and resulting from this law suit."

The court concluded that the action by the Board terminating Mims was invalid and found that Mims was entitled to his total accrued and unpaid salary in the amount of $77,256.00.

CAA appeals. We affirm the judgment of the trial court.

■ In its first point CAA contends error in that judgment was rendered for Mims without affording CAA a trial on the merits. We overrule this point of error.

A trial on the merits was held on February 6, 1978. Each party appeared and announced ready for trial. During the course of the hearing the witnesses for each party testified. At the conclusion of the trial the court issued a temporary order. By this order the court temporarily enjoined Mims, as requested by CAA, from entering the premises of CAA or communicating with its employees. The court also found that the Board of Directors of CAA was not properly constituted during the meeting in which Mims was "fired" in that there were less than the minimum number of 42 directors on the Board as required by the by-laws.

As a result of this and other irregularities the court found that the action of the Board purporting to fire Mims was invalid. The court ordered the appointment of a receiver to reorganize and reconstitute a Board of Directors and to call a meeting of the reconstituted Board for the purpose of determining Mims' employment status.

This temporary order was issued February 17, 1978. On December 15, 1980, almost three years later, judgment was rendered.

In the interim between the temporary order and judgment CAA appealed the receivership (*Greater Fort Worth v. Mims,* 574 S.W.2d 870 (Tex.Civ.App.—Fort Worth 1978, writ dism'd). The receivership was sustained. The Board was reconstituted and reorganized as ordered. A meeting was subsequently held by the Board on November 11, 1980 to determine Mims' employment status. The judgment recites that "(Mims) employment as Executive Director of the plaintiff (CAA) was not terminated at such meeting of November 11th, 1980."

Basically, CAA would have us conclude that the issuance of a temporary order immediately after a trial on the merits somehow alters the nature of that proceeding. It does not.

The temporary order was issued after a trial on the merits. A final judgment could not in all respects issue at the conclusion of this trial; indeed, not until the receiver was able to properly reorganize the Board to vote regarding Mims employment status.

Only after this process was completed could the court issue a "Final Judgment" as to the permanent injunction, and find how much back pay, if any, Mims was entitled to.

We conclude that the hearing on February 6, 1978 was a trial on the merits.

■ CAA also alleges error in that it was not permitted to offer evidence in mitigation of damages to Mims' counterclaim for salary. We overrule this point of error.

In *Professional Services, Inc. v. Amaitis*, 592 S.W.2d 396 (Tex.Civ.App.-Dallas 1979, writ ref'd n. r. e.) it was held that the fact that a plaintiff, by the exercise of reasonable diligence, might have minimized his damages is a matter which must be pleaded by the defendant in confession and avoidance, that evidence of this fact is inadmissible under a general denial. See also *Thomas v. Callaway*, 251 S.W.2d 921 (Tex.Civ. App.-San Antonio 1952, writ ref'd n. r. e.) in which the court stated, "The burden of pleading and proving the defense of mitigation of damages rested upon appellant and it was his duty to request proper issues and instructions concerning this matter if he desired to have same submitted to the jury." at 926. Mitigation of damages constituted a CAA defense to Mims cross-action. As a result, mitigation of damages was CAA's burden to plead and prove. This it failed to do.

In its second point CAA asserts error in the District Court's overruling of its special exception regarding the amount of monetary damages sought by Mims. We overrule this point of error.

■ In Mims second amended answer he requested, among other things, that he be "reimbursed for all lost wages and other such related employment benefits occasioned by his absence from said employment and resulting from this law suit." CAA excepted to this pleading in that "[i]t contains a general denial and a request for specific performance and an allegation for damages."

Tex.R.Civ.P. 85 states that the original answer may consist of a general denial and may present a cross-action, which to that extent will place the defendant in the attitude of a plaintiff. This is exactly what Mims accomplished by his second amended answer.

■ CAA also asserts that the court erred under Tex.R.Civ.P. 47 in failing to require Mims, as a result of its special exception, to amend his pleading so as to specify the maximum amount claimed.

While CAA's exception complained of Mims' answer as containing an allegation for damages, it did not take exception to the fact that Mims' answer did not specify the maximum amount claimed as damages.

It is settled in this jurisdiction that every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a nonjury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such accounts. Tex.R. Civ.P. 90; and the same can not be raised for first time on appeal. *Lowther v. Lowther*, 578 S.W.2d 560 (Tex.Civ.App.- Waco 1979, writ ref'd n. r. e.); *Patterson v. Hatfield-Holcomb, Inc.*, 582 S.W.2d 899 (Tex.Civ.App.-Waco 1979, no writ).

■ In its third and fourth point CAA asserts error of the trial court in awarding Mims monetary damages. CAA argues that Mims' employment was terminable at will and additionally that Mims, who was neither a member of the Board of Directors nor a shareholder of CAA, lacked the standing to complain of any alleged violations of the by-laws regarding the dismissal of the Executive Director.

We can assume, without deciding, that Mims' employment was terminable at will. However, the by-laws of CAA clearly set out the procedures necessary for the Board of Directors to follow in determining the will of the agency in dealings with its Executive Director.

CAA cites *Texlite, Inc. v. Wineburgh*, 373 S.W.2d 325 (Tex.Civ.App.-Dallas 1963, writ ref'd n. r. e.) in support of its position. In *Wineburgh* the appellee Wineburgh alleged

that the action of the Board of Texlite in firing him was of no consequence in that in so doing the Board failed to comply with the by-laws of the corporation. Wineburgh, alleging the nullity of the Board's act, brought suit for the salary due him as Executive Vice President. In concluding that Wineburgh lacked the standing to bring this action the court stated: "But· can the removed director be heard to complain, when it appears that he is neither shareholder in nor creditor of the corporation? We think not .... Being no longer financially interested in the corporation and having no vested interest in the office of Executive Vice-President, he cannot be allowed thus to thwart the *legitimate desires and purposes* of the corporation." (Emphasis added.)

We find the facts in the present case significantly distinguishable. The *Wineburgh* case was brought at law, not equity. Nor did Mims initiate this action. CAA did. We also note that the corporation in Wineburgh was a private corporation; CAA which is a public corporation. Texlite had shareholders, CAA does not, and there, 100% of the shareholders voted to terminate Wineburgh's employment.

As stated this is not a suit at law brought by Mims but an action at equity, a jurisdiction of the court invoked by CAA's act in seeking and obtaining a temporary restraining order and injunction.

The purpose of the temporary restraining order was to preserve the status quo while allowing the court to determine whether or not Mims was discharged as alleged by CAA. It would be preemptory to sustain CAA's contention on appeal that Mims was discharged at the outset of a trial whose very purpose was to determine Mims· employment status.

The maxim, "He who seeks equity must do equity" has application here. CAA seeks to invoke the equity power of the court in obtaining the injunction on the one hand while attempting to hide behind the strict letter of the law on the other. "[W]hen a party resorts to equity to assert a right not available under law, his own actions are to be measured by equitable standards, and he

may not ... take cover under the strict letter of the law ...." 22 Tex.Jur.2d *Equity* § 42 (1961).

We overrule CAA's third and fourth point of error.

■ In its fifth point CAA asserts error in the trial court's awarding Mims damages for salary accruing after March 3, 1978. On that date CAA filed its $25,000 cash deposit supersedeas bond to abate the receivership ordered by the trial court.

It is CAA's contention that this filing constituted a ratification by CAA of the November 1977 termination of Mims. We disagree and overrule this point of error.

CAA asserts that at the point of filing the supersedeas bond all of its directors were well aware of the controversy between CAA and Mims. As no directors made any objection to the filing, CAA argues, their acquiescence may be presumed.

We disagree and find that such a conclusion stretches the import of the supersedeas too far.

The requirements of the by-laws that the court found lacking in the attempted dismissal of Mims can not be fulfilled by the assumed acquiescence of the Board upon the filing of a supersedeas bond. The court's appointment of the receiver clearly indicates that more is required by the by-laws in properly determining the consensus of the Board regarding Mims employment.

■ In its sixth point of error CAA complains of alleged irregularities in the meeting conducted under the court appointed receiver. The by-laws of CAA required 42 directors in attendance to properly execute a dismissal of the Executive Director. At the November 1977 meeting which unsuccessfully attempted to fire Mims there were 32 directors on the Board, only 18 of whom were present. Three of these 18 were disqualified by the trial court as a result of other violations of the by-laws.

CAA argues here that the action of the November 1980 "reconstituted" Board was as much in violation of CAA's by-laws as the 1977 meeting in that it had only 39 directors present.

There were two orders of business conducted at the November 1980 meeting. The first was to determine the employment status of Mims. The second was to amend the by-laws to reduce the number of directors on the Board of CAA from 42 to 18. The purpose of this second amendment was obvious—to eliminate the difficulty inherent with working with such a large group.

It is Mims contention that prior to the 1980 meeting the receiver expressed to the court his difficulty in obtaining 42 members to serve on the Board. As a result of this and other difficulties, Mims contends, the parties, through their respective counsel, agreed in October of 1980, in an effort to bring this matter to some conclusion, to find a Board of 39 directors sufficient.

If CAA, through its attorney, did in fact agree to the use of 39 directors as opposed to the 42 directors required in CAA's by-laws, its agreement would estop it from complaining of this "irregularity" on appeal. "A party who assumes and successfully maintains a certain position in a judicial proceeding cannot afterward adopt an inconsistent position if doing so would result in prejudice to his adversary." 22 Tex. Jur.2d *Estoppel* § 17 (1961).

CAA makes no mention of this agreement in its brief. However, the findings of fact in the judgment state that the November 1980 meeting of the Board of Directors was "properly constituted in accordance with the previous order of the Court and the agreement of the attorneys for the parties."

CAA nowhere challenges this finding. Nor do we see how CAA was unduly prejudiced as a result of any other "irregularities" it alleges occurred in the November 1980 meeting. We therefore conclude that this meeting was conducted in a manner that was fair and equitable to both parties. We overrule CAA's sixth point of error.

█ In its final point CAA asserts error of the trial court in ruling that CAA's Board action purporting to terminate Mims' employment on November 14, 1977 was invalid, and in awarding Mims damages based on such ruling.

CAA's by-laws in effect on November 14, 1977 specifically required that its Board of Directors be composed of not less than forty-two (42) or more than fifty-one (51) representatives. Any number of board members less than forty-two (42) essentially would mean that the agency's Board of Directors was not properly constituted.

Mims concedes that a quorum of fifty percent of the membership of the Board was required to conduct Board business. The record indicates that only 18 people were present at the meeting in November 1977. By admission of the agency's acting Board chairperson, the Board at that time only had thirty-two active members. Fifty percent or sixteen (16) of that number would constitute a quorum for the purposes of conducting Board business.

The District Court disqualified three persons, i. e., Jewel Fox, Gerald Summerford and Thomas Russell; resulting in only fifteen (15) qualified directors and one (1) short of the required sixteen (16) person quorum.

CAA contends that even with the disqualifications as outlined hereinabove, a valid quorum remained since in effect, the number of the Board of Directors was reduced to twenty-nine (29) with only fifteen (15) persons required for a quorum. As previously noted, the by-laws specifically required not less than forty-two (42) members on the Agency's Board of Directors. Presumably, any reduction in this number would require an amendment of the by-laws. The record is totally devoid of any evidence or testimony indicating that such a by-law amendment reducing the Board to twenty-nine (29) persons existed. We conclude that under no set of circumstances was there a quorum of the agency's Board in attendance to vote on the termination of Mims on November 14, 1977.

We overrule CAA's final point of error.

Affirmed.