# DECEMBER, 1906.

W. R. LOGAN ET AL. v. J. L. NORRIS ET AL.

No. 1600.   Decided December 5, 1906.

**Cotton—Future Delivery—Illegal Contract.**

Where the pleadings of plaintiff and defendant showed that the contract on which recovery was sought was a purchase, in July, by plaintiff, through and in the name of defendants, cotton brokers, and members of the New Orleans Cotton Exchange, of contracts for the sale of cotton in December in such Cotton Exchange, though plaintiffs alleged that they could and would have furnished the cotton for actual delivery if called upon, yet the whole transaction was in the name of the brokers, and the names of the purchasers unknown to the sellers, and no money furnished to make the purchase, nor date fixed for concluding it, but only margins put in the brokers' hands to secure against loss, with power in them to close out the contract on the margin becoming insufficient, the transaction appeared on its face to be an illegal contract (Penal Code, art. 377; Floyd v. Patterson, 72 Texas, 202), and neither party could recover upon such contract.   (Pp. 229–232.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Bell County.

Jesse L. and David Norris sued Logan and Sanger & Ettelson, who reconvened.   Judgment was for defendants and plaintiffs appealed. The Court of Civil Appeals reversed and dismissed the case on the ground that the contract was illegal.   Both parties obtained writ of error.

*James H. Robertson,* for Logan and Sanger & Ettelson.—To sustain this ruling it is necessary that the pleadings, when properly construed, conclusively show:   (1)  that Norris Brothers, at the time they procured Sanger & Ettelson to sell for them the contracts for the future delivery of the cotton, did not intend to deliver the same;  (2) that the parties on the New Orleans Exchange who contracted with them to buy the cotton did not, at the time the contracts were made, intend to receive it, and (3) that Sanger & Ettelson, in making the contracts, as brokers, knew of and participated in the unlawful agreement between the seller and the buyer that there should be no actual delivery of the cotton. Scales v. State of Texas, 66 L. R. A., 730; Heidenheimer v. Cleveland, 17 S. W. Rep., 525; Drouilhet v. Pinckard, 42 S. W. Rep., 136; Irwin v. Williar, 110 U. S., 499; Bibb v. Allen, 149 U. S., 492; Clews v. Jamieson, 182 U. S., 461 (Lawyers Ed., book 45, p. 1183); Chicago Board of Trade v. Christie, 198 U. S., 236 (Lawyers Ed., book 49, p. 1031); Gregory v. Wendell, 40 Mich., 432; Conner v. Robertson, 37 La. Ann., 814; McCarty v. Weare, 91 N. W. Rep., 33; Clay v. Allen, 63 Miss., 426; Wall v. Schneider, 59 Wis., 352; Johnston v. Miller, 53 S. W. Rep., 1052; Gaylord v. Duryea, 69 S. W. Rep., 607; Bartlett v.

Smith, 13 Fed. Rep., 263; Kirkpatrick v. Adams, 20 Fed. Rep., 287; Hentz v. Jewell, 20 Fed. Rep., 592; Bangs v. Hanrick, 30 Fed. Rep., 92; Lehman v. Feld, 37 Fed. Rep., 852; Boyd v. Hanson, 41 Fed. Rep., 174; Sampson v. Caperdown Mills, 82 Fed. Rep., 873; Hill v. Levy, 98 Fed. Rep., 94; Ponder v. Jerome Hill Cotton Co., 100 Fed. Rep., 373.

*A. B. Taylor, Winbourne Pearce* and *Jno. B. Durett,* for Jesse L. and David Norris.—The Court of Civil Appeals erred in holding that the contract entered into was a gambling contract, because both the pleadings and testimony show that the contract was made in good faith, and that actual delivery of the cotton was contemplated.

BROWN, ASSOCIATE JUSTICE.—Jesse L. and David Norris instituted suit in the District Court of Bell County against W. R. Logan and Sanger & Ettelson, the said Logan being sued as the agent of the firm of Sanger & Ettelson. The following is a statement, in substance, of the petition so far as necessary to dispose of the question presented to us:

On the 8th day of July, 1904, and before and since that date, plaintiffs, as a firm, were engaged in the business of buying and selling cotton for immediate and future delivery. Logan was the agent of Sanger & Ettelson in Bell County, who were in the cotton brokerage business in the City of New Orleans, Louisiana, and transacted their business in the Cotton Exchange of the said city, of which they were members. The said Sanger & Ettelson procured contracts both for the sale and purchase of cotton for future delivery for their customers, and, at different times, the plaintiffs, through W. R. Logan, procured Sanger & Ettelson to make sale for them of four hundred bales of cotton, to be delivered in the month of December, 1904, in the City of New Orleans. Sales were made in the Cotton Exchange, and at the time plaintiffs engaged the brokers to make sale they deposited with Sanger & Ettelson $1 on each bale of cotton contracted to be sold, making $400, of which 15 percent, being $60, constituted the commission of Sanger & Ettelson for making the contract of sale, and the remainder, $340, was left in their hands as a margin to secure them against any losses that might arise from the transaction. The business was transacted entirely in the name of Sanger & Ettelson, the plaintiffs not being known to the purchaser of the contracts, nor did the plaintiffs know the name of the persons to whom the cotton was sold; "in said transactions the said customers furnished said firm with money to make the necessary cash payments, to secure and perform said contracts, and the same were made and performed entirely by and in the name of said firm for the use and benefit of the said customers; and the said firm received the profits or paid the losses arising from the said transaction, as the case might be, and accounted with the said customers for the same."

It is alleged in the petition that the cotton was to be delivered in New Orleans, La., and that, at the time the contracts matured, that is, the month of December, 1904, cotton had declined very considerably below the price at which the contracts were sold, and the brokers settled the matter with the purchasers of the contracts by receiving the difference between the price at which the contracts for the cotton were sold

and the market price of the cotton in New Orleans at the time of the settlement, which amounted to $6,000. That during the time the plaintiffs had paid to the brokers $300 as margins upon the said cotton contracts, in addition to the $1 per bale, and it was claimed that Sanger & Ettelson were indebted to plaintiffs for the profits on the contracts and for the margins paid and not used, in the amount of $6,600. The case was tried before a jury, which found a verdict for the defendants upon a plea in reconvention in the sum of $1,455. Upon appeal the judgment was, by the Court of Civil Appeals, reversed, and the case dismissed because it appeared that the suit was based upon an illegal transaction.

The answer of Sanger & Ettelson substantially repeated the allegations of the plaintiffs' petition as to the character of the business pursued by each party, the making of the contract by which the brokers undertook to sell for plaintiffs cotton for future delivery, and the terms of the contract, except that Sanger & Ettelson alleged in their answer that it was agreed between them and the plaintiffs that plaintiffs should furnish to the brokers, upon request, a sum sufficient to secure them against any losses from fluctuation in the market price of cotton to be delivered in the month of December, and that, upon their demand for such deposit, plaintiffs refused to make the same, whereupon they closed out the contracts, as they had a right to do, at a loss, etc. Sanger & Ettelson reconvened for the losses alleged to have been sustained in the transaction. In that answer are the following allegations as to the business and the manner of conducting it: "On or about the dates alleged in plaintiffs' petition, the said plaintiffs did sell, through the said partnership firm of Sanger & Ettelson, at different times, the bales of cotton as alleged by plaintiffs. That said defendants' firm was at that time, and still is, engaged in the cotton brokerage business, and caused to be bought and sold for their customers, in defendants Sanger & Ettelson's name, through the New Orleans Cotton Exchange, contracts for the future delivery of cotton; that said New Orleans Cotton .Exchange is a general cotton market exchange where contracts for the future delivery of cotton are bought and sold by its members, either for themselves or their customers."

It is also alleged, in substance, that Sanger & Ettelson had the right to close out the contracts when they were unwilling to risk greater advances upon them, so as to keep the plaintiffs in the market.

To sustain the action of the Court of Civil Appeals in dismissing this case, it must appear from the petition of the plaintiffs that the transaction between plaintiffs and defendants was a "dealing in futures," and not a sale of cotton to be actually delivered. And the defendants below having reconvened, claiming affirmative relief against the plaintiffs, it must also appear from their pleadings that the transaction was contrary to law. If either party is entitled to relief, then the case must be restored to the docket of the court; if, however, it does appear from the pleadings of both parties that the transaction was contrary to law and public policy, the Court of Civil Appeals rightly dismissed the case, because no court should permit parties to use its processes and methods of trial to settle differences between themselves arising out of a violation of the law.

The plaintiffs alleged in their petition that they sold four hundred bales of cotton through Sanger & Ettelson, brokers, and members of the Cotton Exchange of New Orleans. While they allege that the defendants sold cotton for them, facts are alleged which conclusively show that plaintiffs understood the transaction to be one in which there was no intention to deliver the cotton. For it is said, in substance, that the whole transaction was to be carried out by Sanger & Ettelson, in their own names, by paying the losses and receiving the profits; that is, the difference between the price at which the sale was made and the market price of the contract at the time of sale was either received as profits or paid as a loss. This distinctly shows that, at the time of the transaction, it was not in the minds of the plaintiffs-to deliver the cotton upon the contract made for them. Indeed, they could not have done so, for the reasons: (1) that they did not know the purchaser of the contract, and (2) the transaction had to be concluded in the Cotton Exchange in New Orleans, of which they were not members. The allegation in the petition that they could and would have furnished the cotton for actual delivery, if called upon, does not show that they contemplated so doing, for there was not an allegation in the petition that they ever intended to deliver any cotton to Sanger & Ettelson, to be by them delivered to the purchaser of the contract. Testimony could hardly be more conclusive of the intent with which plaintiffs consummated these transactions than are the facts alleged in their petition.

The allegations of the defendants' answer are not different in any material respect from those of the plaintiffs' petition, so far as they affect the character of this transaction. The plea in reconvention virtually sets up the same facts as to the sale of the cotton as does the petition, but, in connection with that allegation, it is alleged, as it was in the petition, that Sanger & Ettelson were in the brokerage business, and that they caused to be bought and sold for their customers, in their own name, through the New Orleans Cotton Exchange, contracts for the future delivery of cotton, and that the New Orleans Cotton Exchange is a cotton market where contracts for future delivery of cotton are bought and sold by its members either for themselves or their customers. It will. be observed that, when they come to allege the facts with regard to the manner of transacting the business, the defendants allege that their business was to buy and sell, not cotton, but contracts for future delivery of cotton, and that the New Orleans market was a place where contracts for sale of cotton for future delivery were bought and sold.

A significant fact with regard to the pleadings of both parties is that they nowhere allege that it was intended that cotton should be actually delivered upon the contracts, nor is there any day in December alleged as being the time at which delivery was to be made. The allegations of the defendants' plea in reconvention are to the effect that the value of the contract for delivery of cotton in December was not ascertained by reference to the price of cotton at any day of, or even in, the month of December, but it was ascertained by the market price of the contract of sale in the New Orleans market at the time when it was determined what was necessary to be furnished in order to keep the plaintiffs upon the market.

Suppose the plaintiffs had insisted upon delivering cotton under the

contract, and had gone to New Orleans for that purpose, upon what day of the month of Devember would they have made the tender, and to whom could they have tendered it? There is such a marked difference in the alleged manner of settling profits and losses on these contracts for future delivery and the well-known rule of law, which governs in determining the rights of the parties upon a failure to comply by actual delivery, that there can be no question that there was not in the minds of either of the parties to this transaction any expectation that cotton would be actually delivered by Sanger & Ettelson for and on account of the plaintiffs. A very potent fact is that, while Sanger & Ettelson were to transact the whole business, no money was provided with which they should buy cotton for delivery.

Such contracts as those set forth in the pleadings in this case are against public policy, and contrary to article 377, Penal Code. (Floyd v. Patterson, 72 Texas, 202.)

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*