## KENEDY MERCANTILE CO. v. AINSWORTH et al. (No. 7078.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 23, 1924. Rehearing Denied Feb. 13, 1924.)

1. Gaming ⟶14—Contract providing for payment of margins on increase in market price of cotton held gambling contract.

Where one party delivered cotton to the other, and received from the other the market price of the cotton, with the understanding that, if the cotton went lower in price than the amount received, the first party should keep the amount received, but that, if the price increased in value, the second party would, on demand, pay the first party the margin or profit, the transaction was a gambling contract, in violation of Pen. Code 1911, arts. 536 and 539.

2. Compromise and settlement ⟶6(4)—Settlement of dispute as to amount due under gambling contract held not enforceable.

A settlement and compromise of a dispute as to the amount due under a gambling contract, providing for payment of margins, was unenforceable, and a check given in performance thereof was illegal, and could be withdrawn by drawer.

3. Gaming ⟶14—Form of contract not conclusive as to whether the transaction is a gambling transaction.

The form of a contract is not conclusive as to whether the transaction is a gambling transaction providing for the payment of margins.

4. Gaming ⟶14—Facts held to establish a gambling transaction in margins.

In an action in which it was alleged that plaintiffs loaned the defendant a certain number of bales of cotton, and the defendant deposited with plaintiffs the market price of such cotton under an agreement that defendants should return the cotton to plaintiffs, and money deposited should be returned to defendant, facts held to show that the contract was in reality a gambling transaction in which it was intended that the defendant should not return

the cotton, but should pay plaintiffs the margin on the cotton in the event of an increase in the market price.

Appeal from District Court, Karnes County; Covey C. Thomas, Judge.

Suit by J. W. Ainsworth and others against the Kenedy Mercantile Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

C. G. Hallmark, of Kenedy, for appellant.
J. O. Faith, of Karnes City, for appellees.

FLY, C. J. This suit was instituted by appellees, J. W. Otto, and Oliver Ainsworth, composing the firm of Ainsworth Bros. & Co., against appellant, a corporation, in which it was alleged that on August 12, 1921, appellant "asked them to borrow 41 bales of cotton to fill a contract said defendant then had, and plaintiffs loaned the defendant the said 41 bales of cotton, weighing 21,515 pounds of lint cotton, and the said defendant deposited on said cotton the price of the same on that date, which was 12.25 cents per pound, with the agreement of both parties that said cotton should be returned to plaintiffs when they demanded the same, and the said money deposited on the same should be returned to defendant by plaintiffs." Seventeen days after the cotton was "borrowed," demand was made for its return, and 11 of the 41 bales were returned, so it was alleged, and also that finally in June, 1922, demand was made for the return of the remaining 30 bales, and the threat made that, if the cotton was not returned at once, a claim for 9.55 cents a pound would be made on the 15,808 pounds of cotton not returned. It was also alleged that the price of the cotton when it was borrowed was 12.25, and the price on September 12, 1921, was 19.50 cents, and that appellant in a compromise agreed to pay the sum of $1,146, the increased value, on September 12, 1921, and gave appellees a check for that amount, but before it was paid stopped payment of the same. Appellant demurred to the petition, and answered that the transaction between the parties was a gaming contract, and void as against public policy.

This is a peculiar case as pleaded by appellees, for the pleadings create the impression that the identical cotton borrowed by appellant was to be returned to appellees, and yet it is, inconsistently with that theory, alleged that the cotton was borrowed to fill a contract with a third party by appellant. Delivering the cotton to the third party would necessarily render it impossible to return it to appellees. It can clearly be inferred from the pleadings that the parties did not expect the identical cotton to be returned, if they expected that any cotton would ever be returned. The transaction of borrowing is rarely, if ever, applied to any species of property except money, unless with the implication that the identical property will be returned. If one borrows a horse or a gun or other personal property, except money, from another, it is expected that he will return the identical property borrowed. Another peculiar feature about this transaction is that when the cotton was borrowed the full value of it at the time was deposited with the seller. In other words, the transaction had strong indicia of an executed sale of the cotton. It is rather an arduous task to reconcile the affair with a bona fide transaction as to borrowing and lending, and yet the proof shows that the transaction took place. The transaction has some of the earmarks of a gambling transaction, based upon a contract made with no intention to return the cotton, but with the design that the buyer pay for any increase in the value of the cotton, for the evidence indicates that on August 29, when the cotton was demanded, appellant had sufficient cotton of the grade he borrowed to have returned it, but appellees showed no anxiety to obtain it, although given free access to the cotton. That commodity was at that time, however, on a rising market.

[1, 2] Appellees seem to have abandoned their original demand for over $1,500 increase in the value of the cotton, and desire to accept the less amount agreed on in a compromise made by the parties. If the original transaction was a gambling contract made and intended to be settled by a payment of margins rather than any return of cotton, the law would not countenance a ratification of it, and a compromise in such illegal transaction would have no consideration or basis upon which to rest. If the contract was invalid, the check given in performance of it was illegal, and could be withdrawn by the drawer of it.

As herein indicated it could not have been in contemplation of the parties that the identical cotton should be returned, but either that other cotton should be bought and returned or the increase in price of the cotton be delivered to the lender. The facts can establish nothing but one of these alternatives. In other words, appellant agreed to furnish appellees at some future time 41 bales of cotton, which he did not own at the time the promise was made, and which he could not furnish without purchasing in the open market, and, unless it appears that the commodity was to be delivered and that appellees were to allow appellant the sum for the cotton that he had paid to them on the borrowed cotton, the contract was illegal. If, however, the understanding can be reasonably deduced from the actions of the parties, whether expressed in terms or not, that the commodity was not to be returned, but that appellant was to pay appellees the difference between the value of the cotton when

"borrowed"' and the price on the market when the commodity was demanded, then this transaction resolves itself into a dealing in futures, constitutes nothing more than a wager on the rise and fall of prices, and is null and void. In this agreement there was no reciprocity, as it is construed by appellees, for they received full market value for the cotton at the time they delivered it to appellant, and, of course, could not possibly lose anything by the transaction. To all intents and purposes they sold the cotton for all it was worth at the time, and could rest easy on a rising market, and had nothing to fear from a falling market. On the 11 bales returned appellees made a considerable profit with no intimation that any of it was returned to appellant. The latter was merely credited with the weights of the 11 bales, and appellees gathered in the profit of 3¼ cents a pound. Appellees had all to gain and nothing to lose on the cotton, unless speculative profit was something for them to lose. They figured their compromise on the basis of a profit of 7¼ cents a pound, or $1,146 in the aggregate. Let it be kept in mind that appellees received before they delivered the cotton full market value for it, and everything received in addition thereto is speculative profit.

[3] The form of the contract cannot be conclusive as to the true character of the transaction, and need not be given great importance. If it can be deduced from the affair, no matter how ingeniously the true intent may be concealed under the guise and mask of an innocent contract, that an illegal agreement was being covered up, the contract should be declared illegal and void. If the borrowing scheme was adopted as a screen to hide an intention upon the part of appellees and appellant that the contract of return of the cotton might be met by paying and receiving a margin on such contract, then such contract was in violation of law, and could not be enforced. Rev. Crim. Stats. (Pen. Code.) arts. 536, 539; Logan v. Norris, 100 Tex. 228, 97 S. W. 820.

Appellees pleaded that upon return of the "borrowed" cotton they were to repay the amounts paid to them by appellant, but the statement of facts fails to show any such agreement, but to disprove it. Not one dollar that was paid on 11 bales, for which 11 bales of cotton were returned to appellees, was credited to the account of appellant, but everything proceeded on the assumption that the money paid by appellant to appellees for the cotton was their money. The value of the 11 bales was not credited to appellant, but the weight was deducted from the total weight.

[4] The legitimate deductions may be drawn from the contract and actions of the parties that it was intended by the parties that, if cotton went lower than 12¼ cents a pound, the amount paid by appellant, appellees would keep the amount, and the transaction would be closed, but, if cotton increased in value, appellant would, on demand, pay appellees the margin or profit on the cotton. Even if it was not a contract for futures, it was one so unconscionably unjust and one-sided that it should not be sustained. No contract which shows a sale of a commodity for its full value, which is paid, and provides for the return of the commodity and its retention as well as the value paid, should be sustained. That is the effect of the testimony in this case. Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363.

If we were fully satisfied that there had been a full development of all the important and vital facts in this case, we would reverse the judgment and render one dismissing the cause, but not feeling so satisfied the judgment will be reversed and the cause remanded, to be tried along the lines indicated in this opinion.

Reversed and remanded.