Dr. Ronald L. SWAIN, Appellant,

v.

WILEY COLLEGE, Appellee.

No. 06–01–00083–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 31, 2002.

Decided April 12, 2002.

Beverly C. Dureus, Kevin B. Wiggins, H. Ron White, Tonya Parker, White & Wiggins, LLP, Dallas, for appellant.

David R. Watson, Harbour, Smith, Harris & Merritt, Longview, for appellee.

Before CORNELIUS, C.J., ROSS, and BASS,* JJ.

## OPINION

BILL BASS, Justice (Assigned).

Dr. Ronald Swain appeals a summary judgment rendered against him in his suit against Wiley College for breach of his contract of employment. Dr. Swain contends in a single issue that the trial court erred in granting Wiley College's motion for summary judgment and in denying his motion for partial summary judgment. Three questions are raised: is the act of organization's board of directors void or is it merely voidable if made at a board meeting called in a manner not in compliance with the organization's bylaws; does an employee have standing to challenge procedural irregularities in the call of the board; does the efficacy of the later ratification of that act at a duly summoned board meeting relate back to its original adoption?

Wiley College's motion for summary judgment alleged three grounds: (1) that the meeting of May 13, 2000, and the actions taken pursuant to that meeting were not void, but at the most voidable; (2) that Dr. Swain, as a nonvoting member of the college's board, did not have standing to object to any irregularities in the manner in which the meeting was called and conducted; and (3) that the decision made at the May 13 meeting and actions taken pursuant to it were ratified at the regular board meeting in July, the ratification relates back to May 13, and since no one with standing has avoided or sought to avoid the actions taken at that meeting,

the actions taken stand as the acts of the corporation.

A summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference and doubt must be indulged and resolved in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When both parties move for summary judgment, the nonprevailing party may appeal both the granting of the prevailing party's motion and the denial of its own motion. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996); *Ostrowski v. Ivanhoe Prop. Owners Improvement Ass'n*, 38 S.W.3d 248, 252 (Tex.App.-Texarkana 2001, pet. denied).

The facts are undisputed. Only the legal significance of those facts is in question. Wiley College is a nonprofit corporation having no members. On May 5, 1997, Dr. Swain and Wiley College entered into a contract pursuant to which Dr. Swain would become president of the college. The contract was for a term of three years beginning July 1, 1997, and ending June 30, 2000. The contract provided an automatic renewal of the contract for another three years unless Wiley College notified Dr. Swain of its intention not to renew his contract in writing by certified mail, return receipt requested, no less than thirty days prior to the end of the contract term.

A quorum of the board of trustees of Wiley College met on May 13, 2000, in a specially called teleconference meeting to consider the renewal of Dr. Swain's employment contract. The call of the meet-

---

* Justice Bill Bass, Retired, Sitting by Assignment.

ing did not comply with the procedure provided in the Wiley College bylaws for the call of a special meeting because the trustees were not given the ten days' advance notice of the meeting as the bylaws required, the notice was not sent by the chairman or the board secretary, and the meeting was not identified as a "special meeting."

During the meeting, the board voted not to renew Dr. Swain's contract. Dr. Swain was sent written notice of the board's decision on May 16, 2000, and Dr. Swain received the notice on May 22, 2000, more than thirty days prior to the expiration of the contract on June 30, 2000.

The Wiley College board held its regular summer meeting on July 21–22, 2000, with a quorum of voting members present. There is no claim of irregularity in the call, composition, or conduct of this meeting.[1] At this meeting, the board ratified the decision not to renew Dr. Swain's contract made at the May 13, 2000, meeting.

Dr. Swain was prevented from exercising the duties of president after June 30, 2000, and no longer received housing, transportation, and other benefits properly belonging to the position. When Wiley College denied Dr. Swain's demand for full payment of his salary for the additional three-year term, Dr. Swain filed suit. Dr. Swain contends that the action taken by the improperly summoned board was a nullity. Therefore, he argues, the notice he received on May 22, 2000, informing him of the decision made at that meeting was also ineffectual to fulfill the contract's requirement that he receive notice by May 30 if his contract was not to be renewed.

Dr. Swain also contends that he should recover even if the May 13, 2000, action was not void, but only voidable and therefore subject to ratification. He argues that the ratification by the duly called board on July 21 was untimely, because his right to the extension of his contract accrued on May 30, 2000. Although acknowledging that ratification has retroactive efficacy relating back to the inception of the transaction, he characterizes his right to the extension of his contract as the intervening right of a third party which cannot be defeated by the application of the rule.

## VOID OR VOIDABLE

The threshold question presented is whether the action taken at the May 13 meeting is "void" or merely "voidable." If "void," then the decision made not to extend Dr. Swain's contract is a nullity, of no effect, and not susceptible of ratification. *Cummings v. Powell,* 8 Tex. 80, 85 (1852). A "voidable" act operates to accomplish the thing sought to be accomplished until the fatal vice in the transaction has been judicially ascertained and declared. *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674 (1942). A voidable act may be subsequently ratified or confirmed. *Cummings,* 8 Tex. at 85. Examples abound that illustrate the difference between "void" and "voidable" in other contexts. A contract is only void if it violates a specific statute or is against public policy, whereas a contract procured by fraud is merely voidable and will not be avoided unless the complaining party proves its right to avoid it. *See Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 553 (Tex.2001); *Logan v. Norris,* 100 Tex. 228, 97 S.W. 820 (1906); *GNG Gas Sys., Inc. v. Dean,* 921 S.W.2d 421, 427 (Tex.App.-Amarillo 1996, writ denied). An otherwise valid contract between an adult and a mi-

---

**1.** No voting member of the board has at any time objected to the conducting of the special meeting of May 13 or the manner in which it was called. As president, Dr. Swain was an ex-officio, nonvoting member of the board of trustees.

nor is not void, but only voidable. *Pioneer Cas. Co. v. Bush*, 457 S.W.2d 165, 168 (Tex.Civ.App.-Tyler 1970, writ ref'd n.r.e.). A judgment is void only when the court had no jurisdiction of the person or the subject matter of the controversy. *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987).

There are more closely analogous contexts wherein the courts have distinguished between the two concepts. In *Popperman v. Rest Haven Cemetery, Inc.*, 162 Tex. 255, 345 S.W.2d 715 (1961), Popperman sued to recover on promissory notes executed by the corporation. The defendants asserted the notes were void because one of the directors voting to approve them was not a shareholder as required by the bylaws. The trial court and the court of civil appeals agreed. In reversing the decision of the lower court, the Texas Supreme Court held that the mere violation of a bylaw provision did not render the act of the board of directors void. *Id.* at 717. When, in violation of former TEX. BUS. CORP. ACT ANN. art. 2.03(c) (Vernon 1980), a corporation purchased its own stock without having unrestricted earned surplus, the action was not void and the debentures issued in exchange for such stock were enforceable. *Triumph Smokes, Inc. v. Sarlo*, 482 S.W.2d 696 (Tex.Civ.App.-Tyler 1972, writ ref'd n.r.e.). The failure of a corporation to record the actions of its directors in corporate minutes, as required by its bylaws and the Texas Non Profit Corporation Act, does not render the action invalid. *Cameron & Willacy Counties Cmty. Projects, Inc. v. Gonzalez*, 614 S.W.2d 585, 589 (Tex.Civ. App.-Corpus Christi 1981, writ ref'd n.r.e.). A contract of a municipal corporation authorized by an irregular resolution is not "void," but simply voidable. *Aspinwall-Delafield Co. v. Borough of Aspinwall*, 229 Pa. 1, 77 A. 1098, 1100 (1910). Acts performed in the corporation's interest but beyond management's explicit authority are characterized as voidable. 18a AM. JUR.2D *Corporations* §§ 980–988 (1985).

Dr. Swain argues that the holding in *Greater Fort Worth & Tarrant County Cmty. Action Agency v. Mims*, 627 S.W.2d 149 (Tex.1982), stands for the proposition that an improperly convened meeting of the board "is considered to be illegally constituted, and thus without authority to take the actions designated at the meeting." This overstates the court's holding. The true import of the Texas Supreme Court's decision in the *Mims* case is better understood in the light of its convoluted facts and procedural history.

The Greater Fort Worth and Tarrant County Community Action Agency was a nonprofit corporation organized to assist the indigent citizens of Tarrant County. A group acting as its board of directors met and voted to fire George Mims, the agency's executive director. Mims refused to relinquish his position, contending the board's action was in violation of the organization's bylaws.

The agency brought suit in equity seeking to enjoin Mims from continuing to act as executive director. At the hearing, the evidence showed that the board that fired Mims had only thirty-two members rather than forty-two, as the bylaws required. It appeared that nonmembers of the board had voted as board members at its meetings. Eighteen persons, less than a quorum, had participated in the meeting that attempted to discharge Mims. Three of those voting were later determined to be disqualified. The trial judge found the board so dysfunctional as it was then constituted that, on his own motion, he appointed a receiver for the board to reconstitute the board so that the reorganized board might finally decide the question of Mims' status.

The agency unsuccessfully appealed both the appointment of the receiver, *Greater Fort Worth & Tarrant County Cmty. Action Agency v. Mims*, 574 S.W.2d 870 (Tex.Civ.App.-Fort Worth 1978), as well as the final judgment rendered some three years later. The court of civil appeals affirmed the trial court's finding that the board that fired Mims was illegally constituted. *Greater Fort Worth & Tarrant County Cmty. Action Agency v. Mims*, 618 S.W.2d 942, 946–47 (Tex.Civ. App.-Fort Worth 1981), *rev'd on other grounds*, 627 S.W.2d 149 (Tex.1982). Although the issue of the illegality of the meeting was not before the Texas Supreme Court, the agency contended on appeal that the decision to fire Mims had been ratified by the board when it acquiesced in the filing of a supersedeas bond to abate the appointment of the receiver by the trial court. While reversing the case on other grounds, the Texas Supreme Court gave short shrift to the agency's contention, holding that the board was illegally constituted so it had no authority to terminate Mims, and that until it was properly constituted, that is, reorganized, it could not ratify its earlier unauthorized acts. *Mims*, 627 S.W.2d at 151.

In context, it is readily apparent that the *Mims* courts used the term "illegally constituted" to describe a board so impaired that it was no longer organized or functioning as it was established (or constituted). There is an easily drawn distinction between the Wiley College board, a legally constituted governing body proceeding in an irregular manner, and the illegally constituted board in *Mims*, which not only flagrantly disregarded its bylaws, but was not even organized as required and therefore lacked the legitimacy to proceed at all. "Illegally constituted" cannot be stretched to describe the Wiley College board, a properly organized and functioning board,

a quorum of which was convened in an unauthorized manner.

■ Although unduly convened, the Wiley College board was not illegally constituted, and the decision made at the May 13 meeting was not a nullity but only voidable at the instance of someone with standing to complain.

*STANDING*

In its motion for summary judgment, Wiley College urged that Dr. Swain did not have standing to challenge the procedural irregularities in the call of the special meeting at which the decision was made not to extend his contract.

■ It appears settled, in most if not all jurisdictions, that the legality of actions taken at a shareholders' meeting is not open to collateral attack by nonshareholders on any ground of informality or irregularity in the meeting. *See* 18a Am. Jur.2d *Corporations* § 987. No imagination is required to envision the paralyzing effect a contrary rule would have on corporate operations. The rationale for the rule should apply with equal or greater force to the Wiley College board. Wiley College is a nonprofit corporation without members, and its policy-making and management functions are vested solely in its board of trustees. Dr. Swain is only an ex-officio member of the board without the power to vote.

In *Texlite, Inc. v. Wineburgh*, 373 S.W.2d 325 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.), the Texlite directors met and voted to terminate Wineburgh's employment as executive vice-president and abolish the position. Wineburgh had sold his stock in the company, but the sale had not been recorded on the corporation's stock transfer ledger, so that Wineburgh was still shown of record as an owner of shares, entitled to notice of shareholders'

meetings. Wineburgh was given no notice of the shareholders' and directors' meeting at which he was discharged. In his action against the corporation for his salary from the date of his dismissal until the date of trial, Wineburgh contended the attempt to oust him was ineffective because his dismissal was beyond the scope of the call of the meeting and because the secretary of the corporation did not find a quorum present and did not certify that notice of the meeting had been sent to all shareholders of record. He further contended that since his removal as a director at an illegal meeting of the shareholders was ineffectual, the subsequent board meeting was likewise illegal for lack of notice to him, and therefore incompetent to dismiss him. The court rejected Wineburgh's contention, holding that he had no right to complain about such matters because he owned no stock in the company. The court stated the rational basis for its holding as follows:

> The provision in the bylaws limiting the right to vote to those "who appear as stockholders upon the records of the company", and the statutory provisions for notice of meeting and for the preparation of a voting list prior to meetings (Arts. 2.25 and 2.27, Business Corporation Act, V.A.T.S.) are *all for the benefit of the corporation.* They do not afford to one not a shareholders [sic] a right to complain of lack of notice of a meeting, or of the absence of a quorum, or of action taken by the shareholders not within the purview of the call of the meeting.

*Id.* at 328 (emphasis added). Wiley College has no members or stockholders, but we see no reason why the same rationale is not equally applicable.

Dr. Swain attempts to frame the issue of his standing to question the board's procedural irregularities as a question of his standing to sue for breach of contract. He argues that a resolution of the standing issue that forecloses his ability to challenge the inner workings of the board is the equivalent of denying his standing to sue for the contract's breach. There is no question that Dr. Swain has standing to sue for breach of contract, but that is not the issue.

The cases cited by Dr. Swain are not in point. In *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan,* 705 S.W.2d 707 (Tex. App.-Texarkana 1985, writ ref'd n.r.e.), Hogan sued for breach of her contract, alleging that the manner in which the school board failed to renew her position as part-time principal violated its own written policies outlined in the contract. We held that the regulations and operational policies adopted by a school board before entering into a contract of employment with a teacher form a part of the contract, and the teacher's employment is subject thereto. *Id.* at 709. Dr. Swain's contract does not incorporate Wiley College's bylaws, and the *Hogan* opinion does not suggest that the bylaws of a private corporation become part of an employment contract.

In *Mims,* the Greater Fort Worth and Tarrant County Community Action Agency sued in equity, asking that Mims be enjoined from acting as the agency's executive director. The court, after a hearing, appointed a receiver. In an interlocutory appeal challenging the receiver's appointment, the agency contended the appointment was error because *Mims* lacked standing to request it. The court of civil appeals overruled the point, noting that the receiver was appointed on the trial court's own motion and was not requested by Mims. *Mims,* 574 S.W.2d at 871. Although the appeals court avoided addressing the issue, it did suggest that if the parties had been differently aligned and

the issue had been squarely raised in the trial court, Mims' standing would have been at least questionable. The court commented, "we can assume, without deciding, that he would not have standing to complain about procedural irregularities in the board's management of the agency." *Id.* The agency attempted to raise the issue again on the appeal of the final judgment. The Texas Supreme Court held that it had waived the issue by failing to present it in the trial court. *Mims,* 627 S.W.2d at 150.

In *Pioneer Specialties, Inc. v. Nelson,* 161 Tex. 244, 339 S.W.2d 199 (1960), another case cited by Dr. Swain, Nelson sued for breach of his two-year contract to serve as president. But in that case it was the *corporation* that contended the contract violated a bylaw provision, limiting the term of president to one year.

We conclude that Dr. Swain did not have standing to contest the decisions of the Wiley College board based upon purely procedural defects in the call of the special meeting of the board.

### RATIFICATION

There is no question that the decision not to extend Dr. Swain's contract was initially made at a special meeting summoned in a manner not in full compliance with the organization's bylaws. Assuming that to be the case, we have explained that the acts done in that May 13 meeting were no more than voidable. A voidable action is valid and effective until it is avoided. *Slaughter,* 162 S.W.2d at 674. A voidable act may be subsequently ratified or confirmed. *See, e.g., Cummings,* 8 Tex. at 85.

The duly convened Wiley College board fully ratified the actions done by the quorum at the special meeting on May 13, 2000. No voting member of the board has ever objected to the actions taken at the special meeting.

The venerable rule is that the ratification by the principal of his agent's act relates back to the time of the act. The rule is operative between the parties to the transaction, but it cannot be applied to defeat the rights of strangers to the transaction acquired in the intervening period between the original act by the agent or officer and the ratification. *Kempner v. Rosenthal,* 81 Tex. 12, 16 S.W. 639, 640 (1891). The rule is often applied in a corporate context.

The doctrine of ratification had its origin in the law of agency. A corporation, like an individual, may ratify and thereby render binding upon it the originally authorized acts of its officers or other agents, and the ratification of an act done by a previously unauthorized officer or agent is, unless rights of third persons have intervened, equivalent to a prior authority and relates back and supplies the authority to do such an act, . . . .

*Great Plains Life Ins. Co. v. First Nat'l Bank,* 316 S.W.2d 98, 106 (Tex.Civ.App.-Amarillo 1958, writ ref'd n.r.e.).

Other cases cited by Dr. Swain also illustrate the operation of the rule, but provide no support for his position. *Franke v. Jones,* 170 S.W.2d 795 (Tex.Civ. App.-Amarillo 1943, writ ref'd), was a suit for a brokerage commission. Franke listed his farm with Jones at the price of $26,000.00. The listing was not exclusive. He also listed the property with Doering and Gilbert. On Saturday, August 30, 1941, Jones gave Franke a written offer to buy the property at the listed price. Franke refused the offer under the pretext that he and his wife had decided not to sell the land. In truth, Franke had been told by Gilbert the day before that Clint Small would buy the land for $26,250.00. Small had not made such an offer, and Gilbert

had no authority to make the offer for him. Not until Tuesday, September 2, 1941, did Small make an offer of any sort. On that day he gave Gilbert a letter offering $26,250.00 for the land. Franke contended that because Small actually made an offer and purchased the property in accordance with the purported offer from him, his offer and purchase constituted a ratification of the unauthorized offer communicated to him by Gilbert the day before the valid offer he received from Jones. The court rejected his contention that the Tuesday ratification had retroactive efficacy and related back to the time of Gilbert's unauthorized Friday offer so as to defeat Jones' claim for commission earned by presenting a genuine offer at the listed price on the intervening Saturday. The court commented that while the relation back doctrine might be applicable to Small and Franke, "this rule is operative only as between the parties to the transaction; it can not be applied so as to defeat the intervening rights of other persons." *Id.* at 798.

In *Kempner*, 81 Tex. 12, 16 S.W. 639, Wenar, Rosenthal's agent for the collection of a debt owed by Goldstein and Melasky, accepted a conveyance of 113 acres in satisfaction of the debt, although he was without authority to do so. After the deed was recorded, but before Rosenthal, a New York resident, knew of or ratified the transaction, Kempner, another creditor of Goldstein and Melasky, caused a writ of attachment to be levied on the 113 acres, under which he subsequently purchased it. The court held that when the property was attached by another creditor before ratification of the agent's unauthorized act, the ratification did not relate back to the date of the deed taken without authority by the agent. *Id.* at 640. The court reiterated the rule that ratification would, as between the parties to the transaction, relate back to the time of the ratified transaction, but

the rule could not be applied so as to defeat the intervening rights of other persons. The fact that a deed had been delivered and recorded did not affect the rule. *Id.*

Dr. Swain argues that he is "a third party" to the *act of ratification* between Wiley College and its board of directors, and his right to the automatic renewal of his contract accrued when the May 30 notice deadline passed without proper notice to him. Since, in his view, his right to the renewal of his contract accrued before the July board ratified the decision made at the special board meeting, his right is an intervening right and ratification cannot operate to defeat his claim. Although Dr. Swain had received notice before the May 30, 2000, deadline, he argues that notice was ineffectual because it proceeded from the unduly convened special meeting.

▮ Dr. Swain confuses the *act of ratification* with the *transaction ratified*. It is clear from the cases that the retroactive effect of ratification is applicable as between the parties to the original *transaction*. It is the intervening rights of other persons who were not parties to the original *transaction* that cannot be foreclosed or defeated by ratification of the act of the agent.

There were only two parties to this transaction, Dr. Swain and Wiley College, acting through a specially called meeting of its board. Dr. Swain is a party to the transaction, not a third party whose rights intervene. The decision made in the May 13 special meeting and the acts done pursuant to it were voidable and remained valid until avoided. No one with standing to do so avoided or even sought to avoid these actions. The ratification of those acts by the board at its regular meeting in July related back to the date of the specially called meeting on May 13. Once

ratified, those acts could no longer be avoided.

The procedural irregularities in the call of the meeting at which the decision not to renew Dr. Swain's contract was made did not affect the validity of the decision or the notice of it sent to Dr. Swain. On May 22, Dr. Swain received timely notice of Wiley College's decision not to renew his contract. There was no breach of Dr. Swain's employment contract, and the trial court did not err in granting summary judgment for Wiley College and in denying Dr. Swain's motion for partial summary judgment.

The judgment is affirmed.