6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00066-CV


______________________________





IN RE:


LOYD TOM LOGAN, JR.








 
 

Original Mandamus Proceeding







 
 



Before Morriss, C.J., Ross and Carter, JJ.

Memorandum Opinion by Justice Ross



MEMORANDUM OPINION


 Loyd Tom Logan, Jr., has filed a petition for writ of mandamus in which he asks this
Court to order the Honorable Danny P. Crooks to file his application to contest probate of
will and to rule on his application to contest probate. Logan also asks us to order the
county court to appoint an attorney to represent him and to order the county court to
appoint a temporary administrator pending the conclusion of the contest proceedings.

 Logan is correct in stating that an interested person may contest the probate of a
will for a period of two years after the will is admitted to probate. Tex. Prob. Code Ann.
§§ 10, 93 (Vernon 2003). It is not apparent from the information provided that the motion
was timely filed, and it does contain a file stamp which indicates it was filed of record
May 6, 2003. Further, an attached letter from the county clerk indicates Logan may
proceed, but only through counsel Robert Rolston. 

 We are concerned about an indication in that letter suggesting we dismissed the
probate case as a part of a previous mandamus proceeding brought by Logan. In that
proceeding, Logan asked us to order the county court to rule on a motion which had been
pending for some time. During the pendency of the mandamus proceeding, the court ruled
on the motion. We therefore dismissed the mandamus as moot. Obviously, this had no
effect on the underlying probate proceeding, except as caused by the county court's ruling
on Loyd's motion.

 Nevertheless, we cannot base a mandamus on supposition and possibilities. A
mandamus issues only when the mandamus record establishes (1) a clear abuse of
discretion or the violation of a duty imposed by law, and (2) the absence of a clear and
adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994); Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Mandamus is an extraordinary remedy that
will issue only to correct a clear abuse of discretion or, in the absence of another statutory
remedy, when the trial court fails to observe a mandatory statutory provision conferring a
right or forbidding a particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985).

 The record provided to this Court does not allow us to determine the status of the
underlying probate proceeding with sufficient certainty to be able to ascertain whether the
motion has been filed or ruled on by the county court or whether it was timely filed at all. 
The record is likewise ambiguous about the status of the probate proceeding itself before
the county court. Under these circumstances, we cannot at this time conclude Logan is
entitled to relief on these grounds.

 Logan also asks this Court to order the county court to appoint counsel to represent
him. The Texas Supreme Court has held that, in some exceptional cases, the public and
private interests at stake are such that the administration of justice may best be served by
appointing a lawyer to represent an indigent civil litigant. Travelers Indem. Co. v. Mayfield,
923 S.W.2d 590, 594 (Tex. 1996). However, as the court has also recognized recently in
Gibson v. Tolbert, No. 02-0190, 2003 WL 1561442 (Tex. Mar. 27, 2003), the existence of
the extraordinary circumstances required to authorize such appointment is a fact-based
question that is best answered in connection with each specific case. 

 From the information provided here, we cannot conclude as a matter of law that
such extraordinary circumstances are shown as would require us to order the county court
to appoint counsel. Our decision on this limited record does not, of course, preclude the
county court from doing so should it determine that to be appropriate. 

 The petition is denied.


 Donald R. Ross

 Justice


Date Submitted: May 27, 2003

Date Decided: May 28, 2003



xercising the duties of president after June 30,
2000, and no longer received housing, transportation, and other benefits properly
belonging to the position. When Wiley College denied Dr. Swain's demand for full payment
of his salary for the additional three-year term, Dr. Swain filed suit. Dr. Swain contends
that the action taken by the improperly summoned board was a nullity. Therefore, he
argues, the notice he received on May 22, 2000, informing him of the decision made at that
meeting was also ineffectual to fulfill the contract's requirement that he receive notice by
May 30 if his contract was not to be renewed. 

 Dr. Swain also contends that he should recover even if the May 13, 2000, action
was not void, but only voidable and therefore subject to ratification. He argues that the
ratification by the duly called board on July 21 was untimely, because his right to the
extension of his contract accrued on May 30, 2000. Although acknowledging that
ratification has retroactive efficacy relating back to the inception of the transaction, he
characterizes his right to the extension of his contract as the intervening right of a third
party which cannot be defeated by the application of the rule.

VOID OR VOIDABLE

 The threshold question presented is whether the action taken at the May 13 meeting
is "void" or merely "voidable." If "void," then the decision made not to extend Dr. Swain's
contract is a nullity, of no effect, and not susceptible of ratification. Cummings v. Powell,
8 Tex. 80, 85 (1852). A "voidable" act operates to accomplish the thing sought to be
accomplished until the fatal vice in the transaction has been judicially ascertained and
declared. Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671, 674 (1942). A voidable act
may be subsequently ratified or confirmed. Cummings, 8 Tex. at 85. Examples abound
that illustrate the difference between "void" and "voidable" in other contexts. A contract is
only void if it violates a specific statute or is against public policy, whereas a contract
procured by fraud is merely voidable and will not be avoided unless the complaining party
proves its right to avoid it. See Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 553 (Tex.
2001); Logan v. Norris, 100 Tex. 228, 97 S.W. 820 (1906); GNG Gas Sys., Inc. v. Dean,
921 S.W.2d 421, 427 (Tex. App.-Amarillo 1996, writ denied). An otherwise valid contract
between an adult and a minor is not void, but only voidable. Pioneer Cas. Co. v. Bush, 457
S.W.2d 165, 168 (Tex. Civ. App.-Tyler 1970, writ ref'd n.r.e.). A judgment is void only
when the court had no jurisdiction of the person or the subject matter of the controversy.
Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987).

 There are more closely analogous contexts wherein the courts have distinguished
between the two concepts. In Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255,
345 S.W.2d 715 (1961), Popperman sued to recover on promissory notes executed by the
corporation. The defendants asserted the notes were void because one of the directors
voting to approve them was not a shareholder as required by the bylaws. The trial court
and the court of civil appeals agreed. In reversing the decision of the lower court, the
Texas Supreme Court held that the mere violation of a bylaw provision did not render the
act of the board of directors void. Id. at 717. When, in violation of former Tex. Bus. Corp.
Act Ann. art. 2.03(c) (Vernon 1980), a corporation purchased its own stock without having
unrestricted earned surplus, the action was not void and the debentures issued in
exchange for such stock were enforceable. Triumph Smokes, Inc. v. Sarlo, 482 S.W.2d
696 (Tex. Civ. App.-Tyler 1972, writ ref'd n.r.e.). The failure of a corporation to record the
actions of its directors in corporate minutes, as required by its bylaws and the Texas
Non-Profit Corporation Act, does not render the action invalid. Cameron & Willacy
Counties Cmty. Projects, Inc. v. Gonzalez, 614 S.W.2d 585, 589 (Tex. Civ. App.-Corpus
Christi 1981, writ ref'd n.r.e.). A contract of a municipal corporation authorized by an
irregular resolution is not "void," but simply voidable. Aspinwall-Delafield Co. v. Borough
of Aspinwall, 77 A. 1098, 1100 (Pa. 1910). Acts performed in the corporation's interest but
beyond management's explicit authority are characterized as voidable. 18a Am. Jur. 2d
Corporations §§ 980-988 (1985).

 Dr. Swain argues that the holding in Greater Fort Worth & Tarrant County Cmty.
Action Agency v. Mims, 627 S.W.2d 149 (Tex. 1982), stands for the proposition that an
improperly convened meeting of the board "is considered to be illegally constituted, and
thus without authority to take the actions designated at the meeting." This overstates the
court's holding. The true import of the Texas Supreme Court's decision in the Mims case
is better understood in the light of its convoluted facts and procedural history.

 The Greater Fort Worth and Tarrant County Community Action Agency was a
nonprofit corporation organized to assist the indigent citizens of Tarrant County. A group
acting as its board of directors met and voted to fire George Mims, the agency's executive
director. Mims refused to relinquish his position, contending the board's action was in
violation of the organization's bylaws.

 The agency brought suit in equity seeking to enjoin Mims from continuing to act as
executive director. At the hearing, the evidence showed that the board that fired Mims had
only thirty-two members rather than forty-two, as the bylaws required. It appeared that
nonmembers of the board had voted as board members at its meetings. Eighteen
persons, less than a quorum, had participated in the meeting that attempted to discharge
Mims. Three of those voting were later determined to be disqualified. The trial judge found
the board so dysfunctional as it was then constituted that, on his own motion, he appointed
a receiver for the board to re-constitute the board so that the reorganized board might
finally decide the question of Mims' status.

 The agency unsuccessfully appealed both the appointment of the receiver, Greater
Fort Worth & Tarrant County Cmty. Action Agency v. Mims, 574 S.W.2d 870 (Tex. Civ.
App.-Fort Worth 1978), as well as the final judgment rendered some three years later. 
The court of civil appeals affirmed the trial court's finding that the board that fired Mims was
illegally constituted. Greater Fort Worth & Tarrant County Cmty. Action Agency v. Mims,
618 S.W.2d 942, 946-47 (Tex. Civ. App.-Fort Worth 1981), rev'd on other grounds, 627
S.W. 2d 149 (Tex. 1982). Although the issue of the illegality of the meeting was not before
the Texas Supreme Court, the agency contended on appeal that the decision to fire Mims
had been ratified by the board when it acquiesced in the filing of a supersedeas bond to
abate the appointment of the receiver by the trial court. While reversing the case on other
grounds, the Texas Supreme Court gave short shrift to the agency's contention, holding
that the board was illegally constituted so it had no authority to terminate Mims, and that
until it was properly constituted, that is, reorganized, it could not ratify its earlier
unauthorized acts. Mims, 627 S.W.2d at 151.

 In context, it is readily apparent that the Mims courts used the term "illegally
constituted" to describe a board so impaired that it was no longer organized or functioning
as it was established (or constituted). There is an easily drawn distinction between the
Wiley College board, a legally constituted governing body proceeding in an irregular
manner, and the illegally constituted board in Mims, which not only flagrantly disregarded
its bylaws, but was not even organized as required and therefore lacked the legitimacy to
proceed at all. "Illegally constituted" cannot be stretched to describe the Wiley College
board, a properly organized and functioning board, a quorum of which was convened in an
unauthorized manner.

 Although unduly convened, the Wiley College board was not illegally constituted,
and the decision made at the May 13 meeting was not a nullity but only voidable at the
instance of someone with standing to complain.

STANDING

 In its motion for summary judgment, Wiley College urged that Dr. Swain did not
have standing to challenge the procedural irregularities in the call of the special meeting
at which the decision was made not to extend his contract.

 It appears settled, in most if not all jurisdictions, that the legality of actions taken at
a shareholders' meeting is not open to collateral attack by nonshareholders on any ground
of informality or irregularity in the meeting. See 18a Am. Jur. 2d Corporations § 987. No
imagination is required to envision the paralyzing effect a contrary rule would have on
corporate operations. The rationale for the rule should apply with equal or greater force
to the Wiley College board. Wiley College is a nonprofit corporation without members, and
its policy-making and management functions are vested solely in its board of trustees. 
Dr. Swain is only an ex-officio member of the board without the power to vote.

 In Texlite, Inc. v. Wineburgh, 373 S.W.2d 325 (Tex. Civ. App.-Dallas 1963, writ ref'd
n.r.e.), the Texlite directors met and voted to terminate Wineburgh's employment as
executive vice-president and abolish the position. Wineburgh had sold his stock in the
company, but the sale had not been recorded on the corporation's stock transfer ledger,
so that Wineburgh was still shown of record as an owner of shares, entitled to notice of
shareholders' meetings. Wineburgh was given no notice of the shareholders' and directors'
meeting at which he was discharged. In his action against the corporation for his salary
from the date of his dismissal until the date of trial, Wineburgh contended the attempt to
oust him was ineffective because his dismissal was beyond the scope of the call of the
meeting and because the secretary of the corporation did not find a quorum present and
did not certify that notice of the meeting had been sent to all shareholders of record. He
further contended that since his removal as a director at an illegal meeting of the
shareholders was ineffectual, the subsequent board meeting was likewise illegal for lack
of notice to him, and therefore incompetent to dismiss him. The court rejected
Wineburgh's contention, holding that he had no right to complain about such matters
because he owned no stock in the company. The court stated the rational basis for its
holding as follows:

 The provision in the bylaws limiting the right to vote to those "who appear as

 stockholders upon the records of the company", and the statutory provisions
for notice of meeting and for the preparation of a voting list prior to meetings
(Arts. 2.25 and 2.27, Business Corporation Act, V.A.T.S.) are all for the
benefit of the corporation. They do not afford to one not a shareholders [sic]
a right to complain of lack of notice of a meeting, or of the absence of a
quorum, or of action taken by the shareholders not within the purview of the
call of the meeting.


Id. at 328 (emphasis added). Wiley College has no members or stockholders, but we see
no reason why the same rationale is not equally applicable.

 Dr. Swain attempts to frame the issue of his standing to question the board's
procedural irregularities as a question of his standing to sue for breach of contract. He
argues that a resolution of the standing issue that forecloses his ability to challenge the
inner workings of the board is the equivalent of denying his standing to sue for the
contract's breach. There is no question that Dr. Swain has standing to sue for breach of
contract, but that is not the issue.

 The cases cited by Dr. Swain are not in point. In Myrtle Springs Reverted Indep.
Sch. Dist. v. Hogan, 705 S.W.2d 707 (Tex. App.-Texarkana 1985, writ ref'd n.r.e.), Hogan
sued for breach of her contract, alleging that the manner in which the school board failed
to renew her position as part-time principal violated its own written policies outlined in the
contract. We held that the regulations and operational policies adopted by a school board
before entering into a contract of employment with a teacher form a part of the contract,
and the teacher's employment is subject thereto. Id. at 709. Dr. Swain's contract does not
incorporate Wiley College's bylaws, and the Hogan opinion does not suggest that the
bylaws of a private corporation become part of an employment contract.

 In Mims, the Greater Fort Worth and Tarrant County Community Action Agency
sued in equity, asking that Mims be enjoined from acting as the agency's executive
director. The court, after a hearing, appointed a receiver. In an interlocutory appeal
challenging the receiver's appointment, the agency contended the appointment was error
because Mims lacked standing to request it. The court of civil appeals overruled the point,
noting that the receiver was appointed on the trial court's own motion and was not
requested by Mims. Mims, 574 S.W.2d at 871. Although the appeals court avoided
addressing the issue, it did suggest that if the parties had been differently aligned and the
issue had been squarely raised in the trial court, Mims' standing would have been at least
questionable. The court commented, "we can assume, without deciding, that he would not
have standing to complain about procedural irregularities in the board's management of
the agency." Id. The agency attempted to raise the issue again on the appeal of the final
judgment. The Texas Supreme Court held that it had waived the issue by failing to present
it in the trial court. Mims, 627 S.W.2d at 150.

 In Pioneer Specialties, Inc. v. Nelson, 161 Tex. 244, 339 S.W.2d 199 (1960),
another case cited by Dr. Swain, Nelson sued for breach of his two-year contract to serve
as president. But in that case it was the corporation that contended the contract violated
a bylaw provision limiting the term of president to one year.

 We conclude that Dr. Swain did not have standing to contest the decisions of the
Wiley College board based upon purely procedural defects in the call of the special
meeting of the board.

RATIFICATION

 There is no question that the decision not to extend Dr. Swain's contract was initially
made at a special meeting summoned in a manner not in full compliance with the
organization's bylaws. Assuming that to be the case, we have explained that the acts done
in that May 13 meeting were no more than voidable. A voidable action is valid and
effective until it is avoided. Slaughter, 162 S.W.2d at 674. A voidable act may be
subsequently ratified or confirmed. See, e.g., Cummings, 8 Tex. at 85.

 The duly convened Wiley College board fully ratified the actions done by the quorum
at the special meeting on May 13, 2000. No voting member of the board has ever objected
to the actions taken at the special meeting.

 The venerable rule is that the ratification by the principal of his agent's act relates
back to the time of the act. The rule is operative between the parties to the transaction,
but it cannot be applied to defeat the rights of strangers to the transaction acquired in the
intervening period between the original act by the agent or officer and the ratification. 
Kempner v. Rosenthal, 81 Tex. 12, 16 S.W. 639, 640 (1891). The rule is often applied in
a corporate context.

 The doctrine of ratification had its origin in the law of agency. A
corporation, like an individual, may ratify and thereby render binding upon it
the originally authorized acts of its officers or other agents, and the
ratification of an act done by a previously unauthorized officer or agent is,
unless rights of third persons have intervened, equivalent to a prior authority
and relates back and supplies the authority to do such an act, . . . .


Great Plains Life Ins. Co. v. First Nat'l Bank, 316 S.W.2d 98, 106 (Tex. Civ. App.-Amarillo
1958, writ ref'd n.r.e.).

 Other cases cited by Dr. Swain also illustrate the operation of the rule, but provide
no support for his position. Franke v. Jones, 170 S.W.2d 795 (Tex. Civ. App.-Amarillo
1943, writ ref'd), was a suit for a brokerage commission. Franke listed his farm with Jones
at the price of $26,000.00. The listing was not exclusive. He also listed the property with
Doering and Gilbert. On Saturday, August 30, 1941, Jones gave Franke a written offer to
buy the property at the listed price. Franke refused the offer under the pretext that he and
his wife had decided not to sell the land. In truth, Franke had been told by Gilbert the day
before that Clint Small would buy the land for $26,250.00. Small had not made such an
offer, and Gilbert had no authority to make the offer for him. Not until Tuesday,
September 2, 1941, did Small make an offer of any sort. On that day he gave Gilbert a
letter offering $26,250.00 for the land. Franke contended that because Small actually
made an offer and purchased the property in accordance with the purported offer from him,
his offer and purchase constituted a ratification of the unauthorized offer communicated
to him by Gilbert the day before the valid offer he received from Jones. The court rejected
his contention that the Tuesday ratification had retroactive efficacy and related back to the
time of Gilbert's unauthorized Friday offer so as to defeat Jones' claim for commission
earned by presenting a genuine offer at the listed price on the intervening Saturday. The
court commented that while the relation back doctrine might be applicable to Small and
Franke, "this rule is operative only as between the parties to the transaction; it can not be
applied so as to defeat the intervening rights of other persons." Id. at 798.

 In Kempner, 16 S.W. 639, Wenar, Rosenthal's agent for the collection of a debt
owed by Goldstein and Melasky, accepted a conveyance of 113 acres in satisfaction of the
debt, although he was without authority to do so. After the deed was recorded, but before
Rosenthal, a New York resident, knew of or ratified the transaction, Kempner, another
creditor of Goldstein and Melasky, caused a writ of attachment to be levied on the 113
acres, under which he subsequently purchased it. The court held that when the property
was attached by another creditor before ratification of the agent's unauthorized act, the
ratification did not relate back to the date of the deed taken without authority by the agent. 
Id. at 640. The court reiterated the rule that ratification would, as between the parties to
the transaction, relate back to the time of the ratified transaction, but the rule could not be
applied so as to defeat the intervening rights of other persons. The fact that a deed had
been delivered and recorded did not affect the rule. Id.

 Dr. Swain argues that he is "a third party" to the act of ratification between Wiley
College and its board of directors, and his right to the automatic renewal of his contract
accrued when the May 30 notice deadline passed without proper notice to him. Since, in
his view, his right to the renewal of his contract accrued before the July board ratified the
decision made at the special board meeting, his right is an intervening right and ratification
cannot operate to defeat his claim. Although Dr. Swain had received notice before the
May 30, 2000, deadline, he argues that notice was ineffectual because it proceeded from
the unduly convened special meeting.

 Dr. Swain confuses the act of ratification with the transaction ratified. It is clear from
the cases that the retroactive effect of ratification is applicable as between the parties to
the original transaction. It is the intervening rights of other persons who were not parties
to the original transaction that cannot be foreclosed or defeated by ratification of the act
of the agent.

 There were only two parties to this transaction, Dr. Swain and Wiley College, acting
through a specially called meeting of its board. Dr. Swain is a party to the transaction, not
a third party whose rights intervene. The decision made in the May 13 special meeting and
the acts done pursuant to it were voidable and remained valid until avoided. No one with
standing to do so avoided or even sought to avoid these actions. The ratification of those
acts by the board at its regular meeting in July related back to the date of the specially
called meeting on May 13. Once ratified, those acts could no longer be avoided.

 The procedural irregularities in the call of the meeting at which the decision not to
renew Dr. Swain's contract was made did not affect the validity of the decision or the notice
of it sent to Dr. Swain. On May 22, Dr. Swain received timely notice of Wiley College's
decision not to renew his contract. There was no breach of Dr. Swain's employment
contract, and the trial court did not err in granting summary judgment for Wiley College and
in denying Dr. Swain's motion for partial summary judgment.

 The judgment is affirmed.



 Bill Bass

 Justice


Date Submitted: January 31, 2002

Date Decided: April 12, 2002


Publish

1. No voting member of the board has at any time objected to the conducting of the
special meeting of May 13 or the manner in which it was called. As president, Dr. Swain
was an ex-officio, nonvoting member of the board of trustees.